United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 31, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

————————

No. 05-30047

————————

JENNIFER CROSS WILLIS,

Plaintiff - Appellant,

versus

COCA COLA ENTERPRISES INC, doing business as Alexandria
Coca Cola Bottling Company Ltd,

Defendant - Appellee.

Appeal from the United States District Court
For the Western District of Louisiana

Before REAVLEY,[*] GARZA, and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Jennifer Cross Willis ("Willis") appeals the district court's grant of summary judgment to

defendant, Coca Cola Enterprises, Inc. ("CCE"), on her claims of interference with her rights

under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and gender

discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C

———————

[*]     Judge Reavley concurs in the judgment only.

§ 2000e *et seq.*

I

Willis had been employed by CCE since 1994, holding several jobs within the company until she reached her final position as a Senior Account Manager. On a Monday in May of 2003, Willis called her supervisor to let him know that she was sick and would be unable to come to work that day. She also informed him that she was pregnant, but did not specifically articulate that she was sick *because* of the pregnancy. The next day, a Tuesday, she called her supervisor to find out where she should report to work, and her supervisor informed her that she could not come back to work until she had secured a medical release from a doctor. She told him that she had a doctor's appointment on "Wednesday." While she evidently meant the *following* Wednesday)) more than a week later)) her supervisor took her to mean the next day. She did not call in again, and had no contact with CCE until the Thursday of the following week, when two employees came to her home to reclaim her company car. At that point, she contacted CCE and was eventually brought in for a meeting where she was informed that she had violated the company's "No Call/No Show" policy. Under this policy, "an employee absent from work for three consecutive days without notifying the supervisor during that period will be considered to have voluntarily resigned." Her employment was then terminated.

Willis brought suit under the FMLA, Title VII, and various Louisiana state statutes. The district court granted summary judgment to CCE on the FMLA claim, holding that Willis had not introduced any evidence that she was requesting medical leave pursuant to the FMLA. Indeed, her desire to return to work indicated that she was not requesting medical leave. The district court dismissed as "post hoc reasoning" Willis's argument that she was on FMLA leave because

-2-

her supervisor did not permit her to return to work until she had secured a medical release. Additionally, the district court held that Willis had not established that CCE's stated reason for firing her was pretextual, and therefore, in violation of Title VII. Her discrimination claim under Louisiana law was identical to her claims under Title VII and the court therefore granted summary judgment to CCE on the state claims as well.

## II

We review a grant of summary judgment *de novo*, applying the same standards as the district court. *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005). Summary judgment is proper only when the movant can demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Federal Insurance Co. v. Ace Property & Casualty Co.*, 429 F.3d 120, 122 (5th Cir. 2005). "We construe all facts and inferences in the light most favorable to the nonmoving party when reviewing grants of motions for summary judgment." *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005).

## A

On appeal, Willis argues that the district court erred in granting summary judgment to CCE on her FMLA claim. Specifically, she argues that CCE was aware that she had requested time off due to sickness, possibly related to her pregnancy, which therefore could be considered a "serious health condition" under the FMLA. 29 C.F.R. § 825.114(a)(2)(ii). She asserts that she was placed on "involuntary FMLA leave" because she was not permitted to return to work until she had secured a doctor's certification. Because she was fired while on this involuntary leave, Willis argues that CCE interfered with her rights under the FMLA.

The appellee asserts that Willis provided inadequate notice to CCE of her need to take

-3-

FMLA leave. *See* 29 C.F.R. § 825.208(a)(1) ("An employee giving notice of the need for unpaid FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine that the leave qualifies under the Act."); *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998) ("While an employer's duty to inquire may be predicated on statements made by the employee, the employer is not required to be clairvoyant." (quoting *Johnson v. Primerica*, 1996 WL 34148, at * 5 (S.D.N.Y. 1996)). Because Willis did not explicitly link her sickness with her pregnancy, CCE avers that it was given inadequate notice of a serious health condition and that it could not have placed Willis on FMLA leave without this notice.

The FMLA allows eligible employees 12 weeks of unpaid leave each year for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee. . . ." 29 C.F.R. § 825.208(a). "An employee giving notice of the need for unpaid FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine that the leave qualifies under the Act." *Id.* at 825.208(a)(1). It is not necessary for the employee to "expressly assert rights under the Act or even mention the FMLA" in order to put the employer on notice of her need for leave. *Id.* at 825.208 (a)(2). This circuit, while declining to issue any "categorical rules" for the type of notice given by an employee, has stated that: "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995).

This case defies the conventional pattern for FMLA claims. Willis does not suggest that

*she* requested FMLA leave and that CCE *then* interfered with, restrained, or denied her rights

under the Act. *See* 29 U.S.C. § 2615(a). Rather, Willis asserts that she was placed on

"involuntary leave" when her supervisor refused to permit her to return to work until she had

gotten a medical release and then, while she was on this mandated FMLA leave, fired her for non-

compliance with the leave policy of the company. To complicate matters, CCE denies that it ever

placed Willis on involuntary FMLA leave, thereby forcing Willis to assert her FMLA rights from

an unusual posture: at the time Willis stopped coming to work, she denied that she needed leave,

but now, enmeshed in litigation, Willis asserts that she was on FMLA leave.

We therefore must consider a novel question for this circuit: what constitutes involuntary

FMLA leave and what are the parties' rights and obligations pursuant to this type of leave. As a

threshold matter, it is not contrary to the FMLA for an employee to be placed on "involuntary

FMLA leave." *See* Megan E. Blomquist, Note, *A Shield, Not a Sword: Involuntary Leave Under

the Family and Medical Leave Act*, 76 Wash. L. Rev. 509, 510 (2001).[1]  In a 1995 advisory

opinion, the Department of Labor stated:

> an employer can count an absence for sickness or injury as an FMLA absence if the
> employee does not request that it be counted as such. So long as the employer is a
> covered employer, the employee is an eligible employee, and the reason for the
> absence meets one of the conditions described in the definitions of 'serious health
> conditions' under FMLA, the employer may designate (and so advise the
> employee) and count the absence against the employee's 12-week FMLA
> entitlement even if the employee has not requested that it be counted as such.

99 Wage & Hour Manual (BNA) 3067, Op. FMLA-68 (July 21, 1995). *See also Tate v.*

---

[1]  The district court erred when it stated, "The court, therefore, finds that, because Willis was not *requesting* FMLA leave, the FMLA is not implicated in this case, and her FMLA claim fails as a matter of law." Such an explicit invocation of the FMLA is unnecessary. *Satterfield*, 135 F.3d at 976 (citing 29 C.F.R. § 825.303).

*Farmland Ind., Inc.*, 268 F.3d 989, 998 (10th Cir. 2001) (noting that the involuntary nature of the leave does not render an employee unable to assert rights under the FMLA); *Moss v. Formosa Plastics Corp.*, 99 F.Supp.2d 737, 741 (M.D. La. 2000) ("[T]here is nothing in [the FMLA] or jurisprudence which prevents an employer from placing an employee on unpaid leave."); *Love v. City of Dallas*, 1997 WL 278126 (N.D. Tex. 1997) (unpublished) (observing that "[e]mployers who force employees to take unpaid leave under the FMLA are really only: (1) placing the employee on involuntary leave, and then (2) giving the employee the option of availing hin or herself of the benefits of the FMLA during the first 12 weeks of such leave").

In an unpublished opinion, the Sixth Circuit discussed what pre-requisites must be met before involuntary leave can be designated FMLA leave. *See Hicks v. Leroy's Jewelers, Inc.*, 225 F.3d 659, *4 (6th Cir. 2000) (unpublished). Citing prior district court opinions, the court observed that the FMLA's implementing regulations allow an employer to place an employee on involuntary FMLA leave so long as the employee is eligible "by virtue of having taken a qualified absence from work." *Id.* The court went on to state, "of course, [the employer's] decision to place [the employee] on 'involuntary' FMLA leave could not be upheld if it were determined that her hospital stay was not a qualifying absence under the Act because she was able . . . to return to work upon her release." *Id.* The Sixth Circuit thus concludes that so long as the employee is eligible for leave under the FMLA, it is immaterial whether it is the employee or the employer who triggers the FMLA leave.

In *Tate v. Farmland Ind.*, 268 F.3d at 989, the Tenth Circuit addressed what notice to the employer is necessary before involuntary leave could be designated FMLA leave. In that case, Tate, who was employed as an operator of commercial vehicles, was diagnosed with a form of

-6-

seizures. *Id.* at 991. His employer placed Tate on sick leave while it determined whether or not he could continue to drive and then formally terminated his employment while he was still on sick leave. *Id.* Tate argued that his employer interfered with his FMLA rights by firing him without providing him with the leave entitled under the FMLA. *Id.* at 996. The district court held that Tate had failed to allege the necessary elements for an FMLA claim and thus dismissed for failure to state a claim; the appeals court reversed. *Id.* at 996-97. The court held:

> Pending its review of Plaintiff's health status, Defendant placed Plaintiff on involuntary sick leave. Thus, Defendant was clearly on notice that Plaintiff might qualify for FMLA benefits since Defendant triggered Plaintiff's leave. Given Plaintiff's allegation that Defendant placed him on sick leave, Plaintiff need not allege he provided Defendant with notice of his rights under the FMLA.

*Id.* at 998. Despite the fact that the FMLA was brought up only in litigation by the plaintiff-employee, the court allowed the claim to proceed.

We believe the statutory language of the FMLA and the relevant caselaw from our sister circuits require, even in the case of involuntary leave, that the employee provide sufficient notice to an employer of the need to take FMLA leave; in other words, that the employee provide notice to the employer of a "serious health condition." *See* 29 C.F.R. § 825.112(a)(4) (mandating that employers grant leave to employees "because of a serious health condition that makes the employee unable to perform the functions of the employee's job"). Although the Tenth Circuit's decision in *Tate* can be read not to require notice of a serious health condition by the employee when the employer mandates leave, in that case, that court was addressing a situation in which the employer knew that the employee suffered from seizures, which is self-evidently a serious health condition in an individual who drives commercial vehicles. *Tate*, 268 F.3d at 991. There was thus no need for that court to consider separately whether the employer was on notice that the

employee had a serious health condition, as the court could safely assume it was. The Sixth Circuit, however, would allow FMLA leave only to an employee with a serious health condition, underscoring that there is a crucial nexus between the employer being on notice of a serious health condition and the employee being placed on FMLA leave, whether or not it is formally designated as such. *Hicks*, 225 F.3d at *4.

We cannot assume that every time an employer chooses to place an individual on leave that the FMLA is triggered. *See Satterfield*, 135 F.3d at 980 (noting that plaintiff had previously taken leave pursuant to internal company policy). The FMLA is implicated, as the statutory language indicates, when the employee has provided sufficient information to "allow the employer to determine that the leave qualifies under the Act." 29 C.F.R. § 825.208 (a)(1). The statutory scheme explicitly states that it is the "employer's responsibility to designate leave . . . as FMLA-qualifying," 29 C.F.R. § 825.208(a), and that the employee "*must* explain the reasons for the needed leave." *Id.* at § 825.208(a)(1) (emphasis added). This sharing of the informational burden will not work if employees, for the purposes of litigation, can later designate leave as FMLA-qualifying without making a proper showing that, at the time they requested leave, they put their employer on notice that FMLA leave was necessary due to a serious medical condition.

While it is true that Willis's employer placed her on leave pending medical release, thereby suggesting that the employer had an awareness that Willis had a medical problem, Willis has not provided sufficient evidence that CCE did so because it was on notice that she had a *serious health condition*, such as sickness due to pregnancy. Willis stated explicitly in her deposition testimony that she did not tell her supervisor that she was sick due to complications in her pregnancy and did not assert that she clearly linked her sickness and her pregnancy. A complaint

-8-

of sickness will not suffice as notice of a need to take FMLA leave. *See Satterfield*, 135 F.3d at 981 ("Requiring an employer to undertake to investigate whether FMLA-leave is appropriate each time an employee . . . is 'sick' is quite inconsistent with the purposes of the FMLA, because it is not necessary for the protection of employees who suffer from 'serious health conditions.'"). Therefore the district court did not err in granting summary judgment to CCE on Willis's FMLA claim.

B

Willis also contends the district court erred in granting summary judgment on her Title VII claim of gender discrimination. The district court held that Willis had not provided sufficient evidence that CCE's stated reason for firing her was pretextual. Willis's supervisor asserted that he believed Willis's doctor's appointment was the day after their conversation, rather than a week following, and that when she neither came to work nor called, she was in violation of well-understood company attendance policies. The district court observed that Willis had not provided evidence that CCE was being "disingenuous" in its explanation of its understanding of the timing of Willis's doctor's appointment. Willis argues on appeal that the stated reason for firing her ) ) the violation of the "No Call/No Show" policy ) ) is merely pretextual for CCE's termination of her employment because she was pregnant. *See* 42 U.S.C. § 2000e(k) (defining discrimination "because of sex" to include "because of or on the basis of pregnancy"). Specifically, she argues that the district court erred in applying a "pretext-plus" analysis in violation of *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 148 (2000) (rejecting the rule that a prima facie case of discrimination combined with some evidence that the purported reason for the firing is false will never allow a jury to find liability).

To analyze a discrimination claim under Title VII, we will engage in the familiar *McDonnell Douglas* three-step analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under this tripartite framework, a plaintiff first must raise a genuine issue of material fact as to all four elements of a prima facie case of discrimination. *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003). To establish a prima facie case, the plaintiff must show that "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated." *Rutherford v. Harris Co., Tex.*, 197 F.3d 173, 184 (5th Cir. 1999). Once this prima facie case is established, the employer has an opportunity to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Johnson*, 351 F.3d at 621. Once the employer offers evidence of such a legitimate reason, the burden shifts back to the plaintiff-employee to raise a genuine issue of material fact that this non-discriminatory reason is merely pretextual. *Id.*

Willis asserts, without citing record evidence, that non-pregnant employees who miss one day of work are not required to produce a medical release prior to returning to work. At the same time, however, Willis states that similarly-situated pregnant employees did not need to adhere to the "No Call/No Show" policy while on leave. She concludes from these facts that she was treated differently from both types of employees and that this is sufficient to indicate that the stated reason for firing her is pretextual. However, there is evidence in the record that while it might be typical to request a medical release after an employee misses two or more consecutive days, a worker who misses one day *can* be required to supply a medical release, particularly if CCE is aware that he or she is under a doctor's care at the time. Furthermore, the affidavits presented to the district court indicate that the anecdotal evidence of pregnant women who did

-10-

not need to call in every day were exempt from such a policy because they had *already* taken a formal leave of absence and had submitted a doctor's note indicating that they would be absent from work until a specified date.

Willis has failed to adduce evidence that the request for a medical release and her subsequent firing due to her violation of the "No Call/No Show" policy, were motivated by unlawful animus. *Reeves*, 530 U.S. at 146 ("[T]he ultimate question is whether the employer intentionally discriminated. . . . It is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 519 (1993)). Willis had yet to obtain a release from her doctor, nor was she in touch with her supervisor for the week that passed before she obtained the release. Indeed, even on the day of her doctor's appointment, Willis did not communicate with CCE, and had no contact with her employer until the following day. Willis has not produced sufficient evidence to raise a fact issue as to whether CCE used her violation of the "No Call/No Show" policy as a mere pretext for a discriminatory firing.

Therefore, we AFFIRM the district court's grant of summary judgment.