# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 12, 2008

Charles R. Fulbruge III
Clerk

No. 06-20843

RICHARD WATKINS,

Plaintiff-Appellant,

v.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE; GARY JOHNSON,
EXECUTIVE DIRECTOR OF THE TEXAS DEPARTMENT OF CRIMINAL
JUSTICE; JANIE COCKRELL, FORMER INSTITUTIONAL DIVISION
DIRECTOR OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:03-CV-05698

Before GARZA, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Richard Watkins appeals the dismissal on summary judgment of his claims against defendants Texas Department of Criminal Justice ("TDCJ"), Gary Johnson, and Janie Cockrell (collectively "Appellees"). We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Watkins, who is black, was a long-term employee of TDCJ; he worked for the agency for approximately 20 years. In 1997, he transferred from the Senior Warden position at the Choice Moore Unit in Bonham, Texas, to the Senior Warden position at the Holliday Unit in Huntsville, Texas. Watkins remained at Holliday until his retirement in February of 2005.

Watkins brought this suit against the TDCJ, alleging hostile work environment, disparate treatment, and retaliation in violation of Title VII of the Civil Rights Act of 1964. Watkins also brought state law defamation and intentional infliction of emotion distress claims against defendants Gary Johnson, the former Executive Director of TDCJ, and Janie Cockrell, the former Institutional Division Director of TDCJ. Watkins based these claims on a number of events that took place during his tenure at the Holliday Unit, namely:

1.     From 1999 through 2001, he was asked to respond to a number of anonymous complaints from employees, even though he contends no warden at that time had ever been required to respond to anonymous complaints.

2.     In April 2000, he received an allegedly unwarranted disciplinary notice, called a Latter of Instruction, regarding an incident with a chaplain volunteer.

3.     In 2001, two black employees were transferred away from his unit and replaced with two white employees.

4.     On February 27, 2002, a probationer visiting the Holliday Unit as part of the "Prison for a Day" program was assaulted by inmates in the presence of TDCJ officers. Watkins was not on duty at Holliday at the time, but the subsequent investigation found him responsible for failing to adequately train and monitor his staff in the administration of the "Prison for a Day" program. As a result, Watkins received a one-month paid disciplinary probation during October and November of 2002.

5. In March 2002, Watkins complained that an undue number of his disciplinary decisions were being overturned by his superiors.

6. In October 2002, after he attended an employee's funeral during his lunch break, he was told he could not go off his unit for lunch as other wardens were allowed to do.

7. During the month of August 2003, Watkins applied for four promotions, all of which were denied. Specifically, he applied to be the Superintendent of Schools, Director of Correctional Institutions, Human Resources Director, and Regional Director.

8. In late 2004, Watkins was advised that he would be transferred to another prison unit to serve as Senior Warden there. He contends that TDCJ was in fact forcing him to resign because it knew that Watkins' disability and health conditions would prevent him from transferring to another facility without incurring significant expense.

Watkins filed a number of interoffice communications to his supervisors in 1999, 2000, and 2002, complaining about his discriminatory treatment. He also filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on January 1, 2003, alleging a "continuous pattern of harassment, discrimination, and retaliation because of my race."

The district court, after examining each of the actions Watkins complained about, ultimately granted summary judgment in favor of TDCJ, Johnson, and Cockrell on all claims. Watkins timely appealed that decision with respect to his claims of retaliation, hostile work environment, defamation, and intentional infliction of emotional distress.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. Willis v. Coca-Cola Enters., Inc., 445 F.3d 413, 416 (5th Cir. 2006). Summary judgment

is proper only when the movant can demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Id.

A. Retaliation Claim

Watkins argues that in light of the Supreme Court's decision in Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S. Ct. 2405 (2006), which repudiated the "ultimate employment decision" standard previously utilized in the Fifth Circuit, the district court's summary judgment order must be reversed because it relied on the "ultimate employment decision" standard in reaching its decision. He contends that his complaints about discrimination at the agency from 1999 through January of 2003 constituted protected activity, and that Appellees unlawfully retaliated against him. In making this argument, he highlights the aforementioned incidents. Appellees urge this Court to affirm the district court's ultimate determination, asserting that Watkins has failed to prove the required elements of a Title VII retaliation cause of action under the undisputed facts of this case, even under the standard announced in Burlington Northern.

Under Title VII, a plaintiff may prove retaliation either by direct or circumstantial evidence. McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). A case built on circumstantial evidence, like this one, is analyzed pursuant to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). McCoy, 492 F.3d at 556. Thus, in order to maintain an action for retaliation, a plaintiff must make a prima facie showing that: (1) he participated in an activity protected by Title VII, (2) his employer took an adverse employment action against him, and (3) a causal link exists between the protected activity and the adverse employment action. Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003). If the plaintiff is able to establish a prime facie case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the employment action. Gee

v. Principi, 289 F.3d 342, 345 (5th Cir. 2002). If the employer meets this burden of production, the plaintiff must then prove that the employer's proffered reason is a pretext for an actual, retaliatory, purpose. McCoy, 492 F.3d at 557.

In granting Appellees summary judgment on Watkins' Title VII claims, the district court relied in part on its determination that Watkins failed to establish the second element of his prima facie case: that he was the victim of an adverse employment action. At the time of the district court's decision, the Fifth Circuit rule for both disparate treatment and retaliation claims was that "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002) (citations omitted). Under this standard, most of the actions Watkins complains of did not qualify as ultimate employment decisions, and thus could not have served as the basis for a Title VII claim for disparate treatment or retaliation. However, in Burlington Northern, the Supreme Court changed the definition of "adverse employment action" for Title VII retaliation cases. In place of the "ultimate employment decision" standard, the Court now only requires a plaintiff to show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 126 S. Ct. at 2415 (internal quotations omitted).

The new standard announced by Burlington Northern cannot save Watkins' retaliation claim, which is fatally flawed on other, independent grounds. First, many of the actions Watkins complains of cannot be retaliatory because they predate his participation in any protected activity. It is undeniable that he engaged in protected activity when he filed his EEOC complaint on January 1, 2003. See 42 U.S.C. 2000e-3(a) (prohibiting retaliation against an employee "because he had opposed any practice made an unlawful employment

practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter."). The only other communication he sent that concerns disparate treatment based on race was his February 7, 2002 interoffice letter, and it only does so by implication.[1] While in his other communications Watkins complains that he is "being treated different for some reason," he does not attribute this treatment to his race. If anything, the record reveals he believed he was treated unfairly because of critical comments he made to the media in January 2000 concerning prison under-funding and staff shortages. These comments are not protected activity under Title VII, and therefore cannot serve as grounds for a Title VII retaliation action.

Having reviewed the record, we conclude that the most definite instance of Title VII protected activity was the EEOC complaint filed in January of 2003. Nevertheless, we will assume for the sake of argument that Watkins first engaged in protected activity when he sent his February 7, 2002 interoffice communication. Any alleged adverse employment actions prior to that date cannot serve as part of a retaliation claim because there was nothing to retaliate against. Specifically, we find that a lack of protected activity precludes any retaliation claim with regard to the Letter of Instruction issued in April 2000; the anonymous complaints received in 1999, 2000, and 2001; the replacement of two black employees with two white employees in 2001; and the overturned disciplinary actions that Watkins complained of in March of 2001.

As for the remaining instances of alleged retaliation which postdate Watkins' February 7, 2002 letter, Watkins has failed to adduce evidence showing that TDCJ's proffered explanations are pretextual, or that there is a sufficient

---

[1] In that communication, Watkins complains that two of his employees were transferred away from his unit and replaced with two insubordinate employees. The two replaced employees were black, while the replacement employees were white.

casual connection between his protected activity and the events of which he complains. Following the February 2002 "Prison for a Day" incident, the Officer of the Inspector General, after conducting an investigation and holding a hearing, placed Watkins on probationary status for one month. Watkins has failed to rebut the legitimate, non-discriminatory reasons presented by TDCJ for the investigation and probation.[2] Instead, he points only to the close timing between his February 7, 2002 communication and the investigation regarding the "Prison for a Day" program that began later that month as proof of retaliatory intent. However, this Court has held that "temporal proximity alone is insufficient to prove but for causation." Strong v. Univ. Healthcare Sys., LLC, 483 F.3d 802, 808 (5th Cir. 2007).

Similarly, the district court found, and we agree, that TDCJ presented legitimate, non-discriminatory reasons for why the candidates it hired for the four positions Watkins applied for in August of 2003 were more qualified and better suited than Watkins. To rebut this justification, Watkins is required to show that he was "clearly better qualified" for those positions. Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 882 (5th Cir. 2003) (citations omitted). While Watkins presents evidence that he is more highly educated than some of the other candidates, Appellees persuasively explain that other factors were taken into consideration as well, including management experience. In light of this, Watkins has failed to make a showing that "leap[s] from the record and

---

[2] Appellees highlight that the reprimand form that was issued to Watkins noted that he was being disciplined because he "failed to ensure his staff was appropriately trained in the Prisoner for a Day Program and failed to follow the progress for such program." Watkins maintains the fact that the investigator assigned to the case, Jimmy Davis, was repeatedly told that he had to find Watkins responsible, even though Davis disagreed that Watkins was liable, is evidence of retaliatory motives. However, during his deposition, Watkins admitted that he did not believe the hearing officer, the person who was ultimately tasked with determining Watkins' punishment, was "improperly motivated."

cr[ies] to all who would listen that he was vastly—or even clearly—more qualified for the subject job." Odom v. Frank, 3 F.3d 839, 847 (5th Cir. 1993).

Watkins also has failed to raise a genuine issue of material fact that the upcoming lateral transfer announced to him in late 2004 was in any way connected to his protected activity. TDCJ has explained that wardens are frequently rotated to other facilities every few years for security and performance reasons, and Watkins himself acknowledged that this does happen. Although he personally disagrees with the practice, he has produced no evidence to show that in his case the planned transfer—with the same title, benefits, responsibilities, and pay—was based on retaliatory motives. Likewise, he has failed to establish a causal link between his protected activity and TDCJ's decision to prevent him from leaving the prison facility for lunch. Details on this particular complaint are less than abundant in the record, but it appears this happened in late 2002 as a result of Watkins taking a mid-morning lunch break to attend a funeral. Again, Watkins has not carried his burden to show that he was subjected to this restriction in retaliation for any protected activity, and because we agree Appellees are entitled to judgment as a matter of law

Because Watkins has failed to raise a material issue of genuine fact that any of the actions he complains of were in retaliation for protected activity, we affirm the district court's grant of summary judgment to Appellees on Watkins' Title VII retaliation claim.

B. Hostile Work Environment Claim

Watkins asserts that the district court erroneously granted Appellees summary judgment on his hostile work environment claim, because the evidence establishes that he suffered unwelcomed, unprovoked harassment by his supervisors and others in leadership positions at TDCJ. In support of his claim, he cites the fact that he was placed on probation, denied promotions, stripped of his management authority regarding his white subordinates, and improperly

investigated. Appellees argue that Watkins has failed to identify any error in the district court's treatment of his hostile work environment claim.

To establish a prima facie case of hostile work environment, a plaintiff must show: (1) that he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known of the harassment, yet failed to take prompt remedial action. Felton v. Polles, 315 F.3d 470, 484 (5th Cir. 2002).[3] The Supreme Court has explained that in determining whether a workplace constitutes a hostile work environment, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Similarly, this Court has acknowledged that for harassment to be actionable, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (internal quotation marks and citation omitted).

The district court, after carefully examining the evidence submitted by Watkins, concluded that his claim must fail because he did not adduce evidence that any of the alleged harassing events were based on race or had a racial character or purpose. See Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 345 (7th Cir. 1999) (noting that, although the challenged conduct need not be "explicitly" racial, it must have a "racial character or purpose to support a Title VII claim.") (emphasis in original). It appears that Watkins is attempting to

---

[3] Because Watkins alleges that he was harassed by supervisors with immediate or successively higher authority over him, he must satisfy only the first four elements. See Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353-54 (5th Cir. 2001 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998)).

impart a racial character to these events by highlighting, inter alia, that two subordinate employees transferred to his unit were white and that he was forced to respond to anonymous complaints filed by employees that he surmises to be white. However, under precedent from this circuit, such arguments must fail. See Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996) (explaining that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" at the summary judgment stage of an employment-discrimination case); Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 403 (5th Cir. 2001) ("This court has consistently held that an employee's subjective belief of discrimination alone is not sufficient to warrant judicial relief.") (internal quotation marks and citation omitted). Therefore, we affirm the district court's dismissal of Watkins' hostile work environment claim.

C. <u>Intentional Infliction of Emotional Distress Claims</u>

Next, Watkins contends that the conduct of Appellees Johnson and Cockrell throughout his employment amounted to intentional infliction of emotional distress. In making this assertion, he presents many of the same complaints discussed above. For example, he argues that they required him to respond to anonymous complaints and that they investigated every aspect of his management in exhaustive detail, even though they did not treat other wardens in such a manner. Similarly, he argues they permitted him to be held responsible for the "Prison for a Day" incident even though they knew he was not there, and that they also replaced the black subordinates who worked under Watkins with white subordinates, one of which was reported to have the Confederate flag tattooed on his body. Watkins asserts that these incidents demonstrate that a material issue of genuine fact exists as to whether Appellees Johnson's and Cockrell's conduct amounted to intentional infliction of emotional distress.

In response, Appellees contend that Watkins' claims of intentional infliction of emotional distress are preempted by Title VII. They cite to the Texas Supreme Court's decision in Hoffman-LaRoche, Inc. v. Zeltwanger, 144 S.W.3d 438, 447-48 (Tex. 2004), where that court wrote that because intentional infliction of emotional distress is a "gap-fill[ing]" tort remedy, "[i]f the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, a statutory claim."

In Texas, to establish a claim for intentional infliction of emotional distress, a plaintiff must show: (1) that the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe. Standard Fruit & Vegetable Co. v. Johnson, 985 S.W.2d 62, 65 (Tex. 1998). Under Texas law, conduct is extreme and outrageous only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." GTW Sw., Inc., v. Bruce, 998 S.W.2d 605, 611 (Tex. 1999) (internal citations omitted).

In light of the Texas Supreme Court's decision in Hoffman, Watkins' claims are preempted. However, even assuming arguendo that they were not, Watkins has failed to make out the elements of intentional infliction of emotional distress under Texas law. As the district court explained, even viewing the evidence in the light most favorable to Watkins, he has failed to raise a genuine issue of material fact that either Johnson or Cockrell engaged in conduct that was extreme or outrageous. At most, Watkins' allegations only demonstrate that he had, at times, a relationship with Johnson and Cockrell characterized by mistrust and hostility. However, that is not enough, under applicable law, to make out a claim for intentional infliction of emotional

distress. See Johnson v. Merrell Dow Pharms., Inc., 965 F.2d 31, 33-34 (5th Cir. 1992) (noting that denial of promotion and salary disputes are "mere employment disputes" insufficient to establish a claim for intentional infliction of emotional distress under Texas law); Diamond Shamrock Ref. & Mktg. Co. v. Mendez, 844 S.W.2d 198, 202 (Tex. 1992) ("falsely depicting [employee] in the community as a thief" is insufficient to constitute outrageous behavior). Accordingly, we affirm the district court's grant of summary judgment to Appellees Johnson and Cockrell on Watkins' intentional infliction of emotional distress claims.

D. Defamation Claims

Finally, Watkins contends that Appellees generated documents and made statements against which falsely accused him of substandard performance and of violating policies. Appellees argue that the claims were properly dismissed by the district court. Further, they assert that they are entitled to qualified privilege and state law official immunity.

Under Texas law, to prevail on a cause of action for defamation, a plaintiff must demonstrate that the defendant: (1) published a statement, (2) that was defamatory concerning the plaintiff, (3) while acting with either (a) actual malice, if the plaintiff was a public official or public figure, or (b) negligence, if the plaintiff was a private individual, regarding the truth of the statement. WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex 1998), cert. denied, 119 S. Ct. 1358 (1999). Moreover, "[d]efamation claims must specifically state the time and place of the publication." Jackson v. Dallas Indep. Sch. Dist., No. CIV. A. 398-CV-1079, 1998 WL 386158, at *5 (N.D. Tex. 1998), aff'd, 232 F.3d 210 (5th Cir. 2000).

Watkins' treatment of this cause of action is very conclusory: he presented no evidence of any specific defamatory statements made by Johnson, and he offered no defense to Appellees' argument that Cockrell did not defame him

during a personnel meeting she conducted with Watkins and his immediate supervisor after she received employee grievances about Watkins' wrongdoing. He has clearly failed to meet his burden; therefore we affirm the district court's dismissal of Watkins' defamation claims as well.

## III.  CONCLUSION

Watkins has failed to raise a material question that any of the actions he complains of were in retaliation for protected activity.  Either the actions pre-dated any protected activity, or Watkins has failed to establish that the actions were driven by retaliatory animus.  Because Watkins' retaliation claim fails on these independent grounds, the Burlington Northern decision does not affect our review of the district court's decision.  See Strong, 482 F.3d at 809.  Moreover, we agree with the district court that Watkins' other claims cannot be sustained. Accordingly, we find no fine no genuine issue of material fact as to any of Watkins' claims and hold that he is entitled to judgment as a matter of law.  For these reasons, the judgment below is AFFIRMED.