NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2021 CA 0740

ALICE M. PIDGEON

VERSUS

EAST BATON ROUGE SHERIFF'S OFFICE

*Judgment Rendered:*   **MAR** 1 6 2022

* * * * * * * *

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C656417

The Honorable William Morvant, Judge Presiding

* * * * * * * *

| | |
|---|---|
| G. Karl Bernard<br>New Orleans, Louisiana | Counsel for Plaintiff/Appellant<br>Alice M. Pidgeon |
| Ashley M. Caruso<br>Mary G. Erlingson<br>Lee J. Ledet<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee<br>Sid J. Gautreaux, III, in his official<br>capacity as Sheriff of East Baton<br>Parish |

* * * * * * * *

BEFORE: McCLENDON, WELCH, AND THERIOT, JJ.

**THERIOT, J.**

Alice M. Pidgeon ("Ms. Pidgeon") appeals the summary judgment by the Nineteenth Judicial District Court, which was granted in favor of the appellee, Sid J. Gautreaux, III, in his official capacity as Sheriff of East Baton Rouge Parish ("Sheriff Sid Gautreaux"), and dismissed Ms. Pidgeon's claims with prejudice. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Pidgeon is an African American female born on January 9, 1966. She began her employment with the East Baton Rouge Sheriff's Office ("EBRSO") as a deputy in corrections in January 2005. She was promoted to Corporal, and subsequently promoted to Sergeant in 2012. At the time of the incident that is the subject of this lawsuit, Ms. Pidgeon was a sergeant. As a sergeant, Ms. Pidgeon had supervisory authority over the corporals and the deputies who worked the C-Shift.

On June 11, 2015, Ms. Pidgeon put her forearm around a subordinate deputy's neck in a chokehold manner in the lobby of the prison before a shift briefing. Ms. Pidgeon did not release the chokehold until the subordinate deputy stuck her key into Ms. Pidgeon's forearm. The subordinate deputy left the lobby in tears and went to her vehicle to call Ms. Pidgeon's supervisor, Lieutenant Harris, to discuss what had transpired. At about the same time, Ms. Pidgeon found Lieutenant Harris in person and informed him about the incident. Lieutenant Harris spoke again with the subordinate deputy about the incident in person later that night.

On September 30, 2015, Warden Grimes learned of the incident and directed Captain Peters to investigate the matter. Captain Peters discussed the incident with Lieutenant Harris. Lieutenant Harris wrote a report and submitted it to Captain Peters. After Captain Peters' investigation, he recommended that Ms. Pidgeon be

2

demoted and suspended for five days for violating Policy and Procedure 01-01.35, "Relations with Commissioned Officers."[1]

The recommendation from Captain Peters went up the chain of command to Warden Grimes. Warden Grimes determined that Ms. Pidgeon's conduct constituted a violent act by a supervisor upon a subordinate employee within her chain of command. Warden Grimes found that Ms. Pidgeon violated Policy and Procedure 03-15, "Violence in the Workplace."[2] Warden Grimes recommended to Colonel McLeary that Ms. Pidgeon be terminated. On October 2, 2015, Colonel McLeary terminated Ms. Pidgeon's employment with EBRSO based on her violations of Policy and Procedure 01-01.35 and 03-15.

On February 10, 2016, Ms. Pidgeon submitted a Charge of Discrimination to the Equal Employment Opportunity Commission ("EEOC"), and on December 19, 2016, the EEOC issued a Notice of Right to Sue to Ms. Pidgeon. In March 2017,

---

[1] Policy and Procedure 01-01.35 provides: "A deputy shall never behave disrespectfully or use threatening or insulting language toward any other officer engaged in the execution of his position or duties. Deputies shall never draw or lift a weapon toward, offer violence against, strike or attempt to strike another officer."

[2] Policy and Procedure 03-15 provides, in pertinent part:

> 03-15.01 PURPOSE
> The [EBRSO] promotes a safe [] environment for its employees. The Office is committed to working with its employees to maintain a work environment free from violence, threats of violence, harassment, intimidation and other disruptive behavior.
>
> ...
>
> 03-15.03 POLICY
> It is the Office's policy to promote a safe environment for its employees and to communicate the attitude that violent behavior will not be tolerated[.]
> All reports of violence, threats, harassment, intimidation, or other disruptive behavior in the workplace will be taken seriously and appropriately dealt with[.]
> Inappropriate behavior can include oral or written statements, gestures or expressions to communicate a direct/indirect threat of physical harm[.]
> Any employee who commits an act of violence may be removed from the premises and may be subject to disciplinary action and/or criminal penalties. The perpetrator shall be held accountable regardless of employment, position, or status[.]
> Any employee who reports a threat of violence, violence, or assists the Office in an investigation of such shall not be retaliated against[.]
> Employees should not ignore violent, threatening, harassing, intimidating, or other disruptive behavior. Employees who do shall report the behavior to a supervisor. Behavior requiring immediate attention should be addressed by a commissioned deputy or law enforcement if available and appropriate.

3

Ms. Pidgeon filed a petition for damages against EBRSO. The petition alleged that EBRSO violated Louisiana Employment Discrimination Laws by engaging in unlawful employment practices consisting of intentional discriminatory treatment of Ms. Pidgeon. Ms. Pidgeon contended that EBRSO discriminated against her due to her gender, race, and age. In December 2017, EBRSO filed an answer and a peremptory exception raising the objection of no cause of action. The hearing on the peremptory exception raising the objection of no cause of action was set for April 23, 2018. After the hearing, the trial court sustained EBRSO's exception raising the objection of no cause of action and dismissed EBRSO.

On April 27, 2018, Ms. Pidgeon was granted leave to file her first amended petition for damages. In her first amended petition, Ms. Pidgeon substituted Sheriff Sid Gautreaux as a defendant in the place of EBRSO. Sheriff Sid Gautreaux filed a motion for summary judgment on November 2, 2020.

A hearing was held on the motion for summary judgment on April 26, 2021. In regards to Ms. Pidgeon's allegations of racial discrimination, the trial court found that Ms. Pidgeon established that she was a member of the protected class, she was qualified for the position, and she was terminated from the position. However, the trial court found that Ms. Pidgeon did not establish that she was replaced by someone outside of the protected class since she was replaced by an African American person who was also a member of the protected class. Next, as to her claim of age discrimination, the trial court found that Ms. Pidgeon did not address whether age was a factor in her termination and there was nothing in the record that showed that age was a factor in the termination. Thus, the trial court did not determine whether Ms. Pidgeon was terminated from her employment due to her age in making its ruling.

Last, as to her claim of gender discrimination, the trial court found that Ms. Pidgeon made a prima facie showing that gender played a part in her termination.

4

The burden then shifted to Sheriff Sid Gautreaux to establish a non-discriminatory reason why Ms. Pidgeon was terminated. The trial court found the non-discriminatory reason for Ms. Pidgeon's termination was the incident wherein she placed a subordinate officer in a chokehold, which was determined to be a violent act with use of force. The trial court indicated that the burden then went back to Ms. Pidgeon to establish that the non-discriminatory reason was a pretext. After reviewing the evidence including the affidavits of Ms. Pidgeon and the subordinate officer, the trial court found that there was a non-discriminatory reason for Ms. Pidgeon's termination and the non-discriminatory reason was not a pretext. The trial court granted summary judgment in favor of Sheriff Sid Gautreaux and dismissed Ms. Pidgeon's claims with prejudice. It is from this judgment that Ms. Pidgeon appeals.

## ASSIGNMENT OF ERROR

Ms. Pidgeon contends that the trial court erred in granting summary judgment in favor of Sheriff Sid Gautreaux as to Ms. Pidgeon's gender based discrimination claim.

## STANDARD OF REVIEW

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Murphy v. Savannah*, 2018-0991 (La. 5/8/19), 282 So. 3d 1034, 1038 (per curiam). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966A(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966A(4). However, the court shall

5

consider any documents filed in support of or in opposition to the motion for summary judgment to which no objection is made. La. C.C.P. art. 966D(2).

The burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966D(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966D(1).

Appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Leet v. Hospital Service District No. 1 of East Baton Rouge Parish*, 2018-1148 (La. App. 1st Cir. 2/28/19), 274 So. 3d 583, 587. In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether or not there is a genuine issue of material fact. *Collins v. Franciscan Missionaries of Our Lady Health System, Inc.*, 2019-0577 (La. App. 1st Cir. 2/21/20), 298 So. 3d 191, 194, writ denied, 2020-00480 (La. 6/22/20), 297 So. 3d 773. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. *Collins*, 298 So. 3d at 194-195. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Simply put, a "material" fact is one that would matter at a trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. *Collins*, 298 So. 3d at 195.

## DISCUSSION

Ms. Pidgeon contends that the trial court erred in granting summary judgment in favor of Sheriff Sid Gautreaux as to Ms. Pidgeon's gender based discrimination claim.[3] Louisiana Revised Statutes 23:332 governs intentional discrimination in employment and states in relevant part:

> A. It shall be unlawful discrimination in employment for an employer to engage in any of the following practices:
>
> (1) Intentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to compensation, or terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin.
>
> (2) Intentionally limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect the individual's status as an employee, because of the individual's race, color, religion, sex, or national origin.

Ms. Pidgeon must show that her gender played a part in the termination of her employment. Based on the commonality between federal and state anti-discrimination laws, state courts may appropriately consider a federal court's interpretation of federal statutes to resolve similar questions concerning Louisiana statutes and the proper burden of proof sequence. *Baldwin v. Board of Supervisors for University of Louisiana System*, 2019-0811 (La. App. 1st Cir. 2/21/20), 299 So. 3d 105, 108, writ denied, 2020-00788 (La. 10/14/20), 302 So. 3d 1118. Gender discrimination may be established through either direct or circumstantial evidence. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). The type of evidence determines the framework to be used in analyzing Ms. Pidgeon's claim. See *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985).

---

[3] In her petition, Ms. Pidgeon filed her lawsuit against Sheriff Sid Gautreaux based on race, gender, and age discrimination. We note she has not appealed the trial court's ruling on race or age discrimination.

7

In cases which rely on circumstantial evidence of intentional discrimination, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), establishes the procedural framework for analyzing motions for summary judgment. Under the *McDonnell Douglas* framework, Ms. Pidgeon must first establish a prima facie case of discrimination. See *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 420 (5th Cir. 2006). To establish a prima facie case of discrimination, Ms. Pidgeon must show that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class. See *Rogalski v. Education Management, Inc.*, 2016-0334 (La. App. 1st Cir. 1/3/17), writ denied, 2017-0249 (La. 3/31/17), 217 So. 3d 363.

If Ms. Pidgeon establishes a prima facie case of discrimination, a presumption of discrimination arises, and the burden shifts to Sheriff Sid Gautreaux to produce a legitimate, non-discriminatory reason for the challenged actions. *Guidry v. Glazer's Distributors of Louisiana, Inc.*, 2010-218 (La. App. 3rd Cir. 11/3/10), 49 So. 3d 586, 590. If the employer produces a legitimate, non-discriminatory reason for the termination, the burden then returns to Ms. Pidgeon to raise a genuine issue of material fact that the non-discriminatory reason offered by Sheriff Sid Gautreaux is merely pretextual. See *Willis*, 445 F.3d at 420. Ms. Pidgeon may meet the burden of establishing pretext and avoid summary judgment if the evidence taken as a whole (1) creates a fact issue as to whether Sheriff Sid Gautreaux's stated reason was what actually motivated him and (2) creates a reasonable inference that gender was a determinative factor in her termination. See *Vadie v. Mississippi State University*, 218 F.3d 365, 374 n. 23 (5th Cir. 2000).

Ms. Pidgeon contends that she was wrongfully terminated because of her gender. Specifically, she asserts that, even though she violated policies and procedures of EBRSO, other similarly situated male employees received less harsh

methods of discipline when they engaged in the same conduct. Because Ms. Pidgeon has not offered direct evidence of discrimination, her claim is properly analyzed under the *McDonnell Douglas* framework.

Sheriff Sid Gautreaux does not dispute that Ms. Pidgeon has shown that she is a member of a protected class, she was qualified for her position, she suffered an adverse employment decision, and she was replaced by a male. Since it is undisputed that Ms. Pidgeon has established a prima facie case of discrimination, a presumption of discrimination arises, and the burden shifts to Sheriff Sid Gautreaux to produce a legitimate, non-discriminatory reason for the termination. See *Guidry*, 49 So. 3d at 590. Sheriff Sid Gautreaux contends that Ms. Pidgeon violated EBRSO's Policy and Procedure 01-01.35 and 03-15 when she placed the subordinate deputy in a chokehold. An employer's claims that an employment decision was based on a legitimate reason is valid if, objectively, the reason given is legitimate, and, subjectively, the employer's reason is not a pretext for discrimination. See *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Sheriff Sid Gautreaux's reason for Ms. Pidgeon's termination is legitimate and non-discriminatory on its face. Ms. Pidgeon placed a subordinate deputy in a chokehold, which was a violation of EBRSO's policies and procedures. The subordinate deputy could not breathe and was crying while the incident occurred, and Ms. Pidgeon did not release the chokehold until the subordinate deputy put her key into Ms. Pidgeon's forearm.

Further, Sheriff Sid Gautreaux's reason for the termination is not merely a pretext for discrimination since Ms. Pidgeon cannot show evidence of disparate treatment or demonstrate that the proffered explanation is false. See *Desport v. Shamrock Energy Solutions, LLC*, No. 19-12446, 2021 WL 5907701, at *4 (E.D. La. Dec. 14, 2021) (Brown, CJ.). Ms. Pidgeon cannot show that she was treated

9

differently than other male employees who engaged in the same conduct. The affidavit of Warden Grimes demonstrates that Ms. Pidgeon is not the only employee who has been terminated by EBRSO after putting a fellow employee in a chokehold. On January 15, 2016, Deputy Percy Brignac placed Deputy Deontre Williams in a chokehold while on duty in violation of Policy and Procedure 01-01.35 and 03-15. Deputy Brignac's employment was thereafter terminated for putting Deputy Williams in a chokehold, similarly to Ms. Pidgeon when she put a subordinate deputy in a chokehold.

Ms. Pidgeon contends that "[s]he regularly watched male deputies, while interacting with one another in [and] around the briefing room, joke with each other, engage in horseplay, and address one another using very coarse language." She further alleges that "[s]he regularly watched male deputies grab each other, place one another in headlocks, make fun of each other's appearance, get angry and cuss each other out and then go about their business, without being subjected to any disciplinary action." However, Ms. Pidgeon only states one specific incident in her affidavit where she alleges EBRSO treated a male employee more favorably than she was treated. Ms. Pidgeon asserts that "[a]t or about September of 2015, Deputy Julian Knight threw hot coffee in an inmate's face which is a clear violation of EBRSO policy and procedure." "Deputy Knight received a seven-day suspension for his action, but was allowed to resume his employment at the same rank and income." This incident involving Deputy Knight is distinguishable from the incident involving Ms. Pidgeon because Deputy Knight's inappropriate conduct was not directed at an employee that he had supervisory power over.

Ms. Pidgeon was the supervisor of the subordinate officer that she put in a chokehold. The subordinate officer was sitting down in the lobby waiting for a briefing meeting when Ms. Pidgeon came up behind her, unannounced, and placed her in a tight chokehold. Further, unlike jokes, horseplay, and very coarse language

10

that Ms. Pidgeon contends some male deputies engage in without recourse, Ms. Pidgeon, as a supervisor, held the subordinate deputy in a chokehold in a way where she could not breathe, could not speak, became lightheaded, and began to cry. Ms. Pidgeon did not release the chokehold until the subordinate officer put her key into Ms. Pidgeon's forearm. Her actions are clearly distinguishable from the others she offers.

Likewise, Ms. Pidgeon cannot show that EBRSO's reason or explanation for terminating her employment is false. Ms. Pidgeon acknowledged that she put the subordinate deputy in a chokehold and did not release the subordinate deputy until the subordinate deputy put her key into Ms. Pidgeon's forearm. Since Ms. Pidgeon cannot show evidence of disparate treatment or demonstrate that EBRSO's explanation is false, we conclude that EBRSO's reason for terminating Ms. Pidgeon's employment is not a pretext for discrimination.

### DECREE

The summary judgment granted by the Nineteenth Judicial District Court in favor of the appellee, Sid J. Gautreaux, III, in his official capacity as Sheriff of East Baton Rouge Parish, and against the appellant, Alice M. Pidgeon, is affirmed. All costs of this appeal are assessed to Alice M. Pidgeon.

**AFFIRMED.**