BALDOCK, Circuit Judge.
Defendant Farmland Industries Inc., employed Plaintiff Charles R. Tate in 1987 to operate a commercial motor vehicle (CMV) hauling propane and other refined fuel products.[1] In 1995, Plaintiff began taking antiseizure medication to control focal seizures, episodes of jerking on the left side of his body. In 1998, Defendant terminated Plaintiffs employment as a CMV operator due to his health condition. According to Defendant, Plaintiffs use of an-tiseizure medication rendered him physically unqualified to operate a CMV.
Following his termination, Plaintiff filed this action against Defendant alleging violations of (1) the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, and (2) the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654. The *991 district court granted summary judgment for Defendant on Plaintiffs ADA claim, and dismissed Plaintiffs FMLA claim for failure to state a cause of action. Plaintiff appeals. We exercise jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.
I.
In October 1996, a Department of Transportation (DOT) authorized medical examiner, Dr. Larry G. Stabler, evaluated Plaintiff as required by federal law and issued him a CMV operator’s medical certification. During the examination, Plaintiff disclosed he had been taking the anti-seizure medication Dilantin since the fall of 1995 to control focal seizures related to Lyme Disease. Dr. Stabler examined Plaintiff again in November 1997 for recer-tification. On the medical examination form, Plaintiff again disclosed his use of Dilantin, and, apparently for the first time, also indicated a history of “seizures, fits, convulsions or fainting.” Nevertheless, Dr. Stabler certified Plaintiff as physically qualified to operate a CMV.
Upon reviewing Plaintiffs 1997 certification, Defendant’s Occupational Health Coordinator (OHC) noticed that Plaintiffs examination record reported a history of seizures. The OHC sent a memo to Plaintiffs supervisor requesting additional information. In the memorandum, the OHC wrote that Plaintiff—
indicated a “yes” for seizures, convulsions, and for medications, fists Dilan-tin — an anticonvulsant. Seizures have never been indicated on previous physicals. The physical done a year ago, Dilantin was fisted “as precautionary measure for past history of Lyme disease.” According to the PDR (drug/medication reference), Dilantin is prescribed only for seizure control.
Responding to Defendant’s request for information, Plaintiffs neurologist, Dr. James E. Duncan, sent a letter to Defendant explaining that Plaintiff suffered from focal seizures. Focal seizures are episodes of jerking on the left side of the body without loss of consciousness. Dr. Duncan confirmed that Plaintiff was taking Dilan-tin, but indicated Plaintiff experienced warning symptoms prior to the onset of a seizure. Dr. Duncan also indicated Plaintiff had not suffered a focal seizure in the past two years.
On or about January 2, 1998, Defendant placed Plaintiff on sick leave while determining whether his history of seizures and use of antiseizure medication would permit him to continue working as a CMV operator. Effective January 30, 1998, while Plaintiff remained on sick leave, Defendant officially terminated Plaintiffs employment. According to Defendant, Plaintiff was not physically qualified to operate a CMV because Plaintiffs use of antiseizure medication necessarily prohibited him from meeting the physical requirements for CMV operators.
II.
Subchapter III of the Commercial Motor Vehicle Safety Act, entitled “Safety Regulation,” 49 U.S.C. §§ 31181-31148, authorizes the Secretary of Transportation to prescribe “minimum safety standards” to ensure “the physical condition of operators of commercial motor vehicles is adequate to enable them to operate the vehicles safely.” Id. § 31136(a)(3). To that end, Department of Transportation (DOT) regulations dictate that “[a] person shall not drive a commercial motor vehicle unless he is physically qualified to do so.... ” 49 C.F.R. § 391.41(a). Among other things, a person is physically qualified to drive a CMV if that person “[h]as no established medical history or clinical diag *992 nosis of ... any ... condition which is likely to cause loss of consciousness or any loss of ability to control a commercial motor vehicle.” Id. § 391.41(b)(8). DOT’s interpretation of its own regulations strongly suggests that a driver who is taking antiseizure medication for any reason is not qualified to drive a CMV. Department of Transportation’s Federal Highway Administration, Federal Motor Carrier Safety Regulations § 391.41(b)(8), at 411 (Mgmt. ed. 1998) (Medical Advisory Criteria for Evaluation Under 49 C.F.R, Part 391.41) (hereinafter “Medical Advisory Criteria”).
III.
The ADA provides in relevant part that “[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees, ... and other terms, conditions, and privileges of employment.” 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate “ ‘(1) that [he] is disabled within the meaning of the ADA; (2) that [he] is qualified-with or without reasonable accommodation; and (3) that [he] was discriminated against because of [his] disability.’ ” McKenzie v. Dovala, 242 F.3d 967, 969 (10th Cir.2001) (quoting Aldrich v. Boeing Co., 146 F.3d 1265, 1269 (10th Cir.1998)). The ADA defines the term “disability” as “(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.” 42 U.S.C. § 12102(2).
In granting summary judgment for Defendant on Plaintiffs ADA claim,[2] the district court focused on the question of whether Plaintiff was disabled within the meaning of the ADA. The court concluded Plaintiff was not disabled because he failed to establish he was “substantially limited” in the “major life activity” of working. Furthermore, the district court concluded Defendant did not “regard” Plaintiff as disabled, but instead perceived him only as unable to obtain CMV certification under DOT’s Medical Advisory Criteria. We need not decide, however, whether Defendant was disabled as required under the first prong of the ADA’s prima facie case. Rather, we conclude as a matter of law that Plaintiff cannot satisfy the second prong of the prima facie case because he could not meet Defendant’s physical requirements for CMV operators, and thus was not qualified to operate a CMV.[3] See Mathews v. The Denver Post, 263 F.3d 1164, 1166-67 (10th Cir.2001) (declining to consider whether plaintiff was disabled under the ADA where he was not qualified for the desired position).
A.
The ADA defines a “qualified individual with a disability” as “an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.” 42 *993 U.S.C. § 12111(8).[4] As a condition to performing the essential functions of an employment position, however, an individual must first satisfy “the requisite skill, experience, education and other job-related requirements of the employment position.” 29 C.F.R. § 1630.2(m). If a plaintiff fails to establish that he has met either step of this analysis, he is not a “qualified individual” within the meaning of § 12111(8). See Basith v. Cook County, 241 F.3d 919, 927 (7th Cir.2001) (explaining that the question of whether someone is a “qualified individual with a disability” involves a two-step inquiry); Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 646 (1st Cir.2000) (same); Weber v. Strippit, Inc., 186 F.3d 907, 916 (8th Cir.1999) (same); Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 810 n. 14 (5th Cir.1997) (same).
The question of whether a job requirement is a necessary requisite to employment initially focuses on whether an employer actually requires all employees in the particular position to satisfy the alleged job-related requirement. Cf. Milton v. Scrivner, Inc., 53 F.3d 1118, 1124 (10th Cir.1995) (holding under the ADA that an essential function of a job must be actually required of all employees in the particular position). This inquiry is not intended to second guess the employer or to require the employer to lower company standards. Id.; see also H. Rep. No. 101-485(II), at 55 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 337 (The ADA “does not undermine an employer’s ability to choose and maintain qualified workers.”). Provided that any necessary job specification is job-related, uniformly-enforced, and consistent with business necessity, the employer has the right to establish what a job is and what is required to perform it.
The foregoing is consistent with the ADA’s legislative history, which speaks directly to an employer’s application of DOT’S physical standards to CMV operators:
With respect to covered entities subject to rules promulgated by the Department of Transportation regarding physical qualifications for drivers of certain classifications of motor vehicles, it is the Committee’s intent that a person with a disability applying for or currently holding a job subject to these standards must be able to satisfy any physical qualification standard that is job related and consistent with business necessity in order to be considered a qualified individual with a disability
H. Rep. No. 101-485(II), at 57, reprinted in 1990 U.S.C.C.A.N. at 339 (emphasis added). Indeed, DOT regulations mandate that an employer “not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle.” 49 C.F.R. § 391.11(a).
B.
DOT regulations state that a person is physically qualified to drive a CMV if that person has no clinical diagnosis of a condition likely to cause “loss of ability to control” a CMV. 49 C.F.R. § 391.41(b)(8). As a supplement to DOT regulations, DOT’s *994 Medical Advisory Criteria set forth in detail DOT’s recommended physical qualifications for CMV operators. The Medical Advisory Criteria strongly suggest that persons taking antiseizure medication, whether for epilepsy or other medical reason, cannot be qualified to drive CMVs. Medical Advisory Criteria § 391.41(b)(8), at 411.[5] According to the Medical Advisory Criteria, the decision as to medical certification should be individualized only where a person who has had a nonepileptic seizure is not taking antiseizure medication. Otherwise, such individual is not qualified to operate a CMV. See 29 C.F.R. § 1630.2(n)(2)(i) (a job function may be considered essential because the reason the position exists is to perform the function).
Admittedly, DOT’s Medical Advisory Criteria are prefaced with a note indi-eating they are only advisory and nonbinding.[6] Nevertheless, the views of an agency such as DOT implementing a regulatory scheme designed to ensure the safety of our nation’s highways “ ‘constitute a body of experience and informed judgment’ ” to which employers may properly resort for guidance. United States v. Mead Corp., 533 U.S. 218, 121 S.Ct. 2164, 2171, 150 L.Ed.2d 292 (2001) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 139-40, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). We hesitate to second guess a legitimate business judgment on the part of DOT and its covered employers as to the necessary qualifications of CMV operators. As then Chief Judge, now Justice Breyer opined: “We doubt that ... the Department [of Transportation] could not adopt reasonable rules concerning the relationship between certain handicaps ... and certain activities *995 like driving.” Ward v. Skinner, 943 F.2d 157, 161-164 (1st Cir.1991) (Breyer, C.J.) (upholding DOT’s refusal to provide a truck driver taking antiseizure medication “an individualized inquiry that would permit him to escape the application of a general agency rule” embodied in a task force recommendation). We have little difficulty concluding that Defendant may rely on a reasonable interpretation of DOT’s Medical Advisory Criteria, which undoubtedly are job-related and consistent with Defendant’s safety and liability concerns, to establish physical requirements for its CMV operators, provided Defendant does so consistently and uniformly.[7] Subject to DOT’s minimum standards, Defendant as the employer has the prerogative of determining what is physically required of its CMV operators. See 49 C.F.R. § 390.3(d) (employers may mandate “more stringent requirements relating to safety of operation and employee safety and health”).
C.
In this case, Defendant’s independent review of Plaintiffs status led to the conclusion that Plaintiff was not physically qualified to operate a CMV under established safety standards. Plaintiff argues however, that Defendant cannot override his medical examiner’s certification. While we are not unsympathetic to Plaintiffs circumstance, we disagree. Due to legitimate safety and liability concerns, Defendant maintains a policy of requiring CMV operators to qualify to operate CMVs in compliance with DOT’s physical requirements-including those requirements set forth in § 391.41(b)(8) of the Medical Advisory Criteria.[8] See Chandler v. City of Dallas, 2 F.3d 1385, 1395 (5th Cir.1993) (‘Woe unto the employer who put ... an [unqualified] employee behind the wheel of a vehicle owned by the employer which was involved in a vehicular accident.”).
Although Defendant acknowledged during discovery that Plaintiff could perform the essential functions of a CMV operator while taking the prescribed dosage of Dilantin, the fact that Plaintiff must take Dilantin to control focal seizures necessarily renders Plaintiff unable to meet a job-related requirement of the employment position, a requirement established by Defendant under DOT’s standards. See Ward, 943 F.2d at 161-64 (noting the risk of seizure to an epileptic taking anti-seizure medication “is low only if the individual actually takes his medicine; he may forget”). Because Plaintiff cannot meet the necessary job-related physical requirements to perform as a CMV operator in Defendant’s employ, he is not a “qualified *996 individual with a disability” as defined in 42 U.S.C. § 12111(8). Accordingly, the district court properly granted summary judgment in favor of Defendant on Plaintiffs ADA claim.
IV.
Plaintiff also challenges the district court’s dismissal of his FMLA claim involving the period of time immediately following his termination. Plaintiff argues Defendant terminated Mm without first providing him “sick leave” to which he was entitled under the FMLA. The FMLA provides in relevant part:
an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:
(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.
29 U.S.C. § 2612(a)(1)(D). A “serious health condition” includes “an illness, injury, impairment, or physical or mental condition that involves ... continuing treatment by a health care provider.” Id. § 2611(11)(B).
A.
In his first amended complaint, Plaintiff alleged “[defendant knew that at all times relevant, up to and including the termination of his employment, plaintiff was taking the medication Dilantin prescribed by his treating neurologist.” Plaintiff further alleged:
Defendant regarded plaintiff to be unfit to perform his job because of a serious health condition. Defendant had placed plaintiff on sick leave, and he was on sick leave when defendant fired him. At the time of said firing, plaintiff still had accrued sick leave remaining. Nonetheless, defendant did not provide plaintiff with notice of his rights under the FMLA and did not provide him leave as required by the FMLA.
See Plant v. Morton Int’l, Inc., 212 F.3d 929, 934-36 (6th Cir.2000) (employee not precluded from asserting an FMLA claim where he would have been unable to return to work within a twelve-week period following his termination).
In dismissing Plaintiffs FMLA claim, the district court concluded that Plaintiff failed to allege the necessary elements to maintain an action under the FMLA.[9] To be an “eligible employee” under § 2612(a)(1)(D), a claimant must have worked 1,250 hours in the twelve months immediately preceding his employer’s alleged violation of the FMLA. Id. § 2 611 (2) (A) (ii).[10] As the district court noted, Plaintiffs complaint failed to allege this time requirement. Such failure, however, is a technical defect easily cured by amendment.
Plaintiff alleged generally that from March 1996 until his termination in January 1998, Defendant employed him as a truck driver. We infer from this allegation that Plaintiff satisfied the time requirement under § 2611 (2)(A)(ii). Therefore, Plaintiffs failure to specifically *997 reference the 1,250-hour time requirement in his complaint does not warrant dismissal of Plaintiffs FMLA claim with prejudice. See Curley v. Perry, 246 F.3d 1278, 1281-82 (10th Cir.2001) (“[Dismissal under Rule 12(b)(6) without affording the plaintiff notice or an opportunity to amend is proper only when it is ‘patently obvious’ that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.”).
B.
The district court also reasoned that Plaintiff failed to allege he requested FMLA benefits from Defendant. The district court concluded such an allegation was necessary to maintain an action under the FMLA because “[i]t is axiomatic that defendant cannot have denied benefits that were never sought.” The FMLA, however, does not require a covered employee to specifically ask for FMLA benefits. An employee need not expressly assert rights under the FMLA or even mention the FMLA. See 29 C.F.R. §§ 825.302(c), 825.303(b); Manuel v. Westlake Polymers Corp., 66 F.3d 758, 761-64 (5th Cir.1995). If the employer is on notice that the employee might qualify for FMLA benefits, the employer has a duty to notify the employee that FMLA coverage may apply. See 29 C.F.R. § 825.208(a). Pending its review of Plaintiffs health status, Defendant placed Plaintiff on involuntary sick leave. Thus, Defendant was clearly on notice that Plaintiff might qualify for FMLA benefits since Defendant triggered Plaintiffs leave. Given Plaintiffs allegation that Defendant placed him on sick leave, Plaintiff need not allege he provided Defendant with notice of his rights under the FMLA.[11]
C.
Despite the foregoing, Defendant argues that Plaintiff did not have a serious health condition as required under 29 U.S.C. § 2612(a)(1)(D). Rather, Defendant points to Plaintiffs insistence that he is able to perform his job as a CMV operator despite his medical condition. Nevertheless, the complaint alleges that Defendant considered Plaintiff “unfit” to operate a CMV “because of a serious health condition.” The FMLA’s definition of a “serious health condition” includes a “physical ... condition that involves ... continuing treatment by a health care provider.” Indeed, Defendant placed Plaintiff on involuntary sick leave precisely because he has a health condition which requires a physician’s continuing treatment. We doubt that many employees placed on involuntary leave for health reasons would consider themselves unable to perform their job. Common sense tells us that this view does not render such employees unable to assert their leave rights under the FMLA.
*998 D.
While we express no opinion on the ultimate outcome of Plaintiffs FMLA claim, we cannot conclude under these circumstances that Plaintiff failed to allege sufficient facts in his first amended complaint to state such a claim. Accordingly, the district court erred in dismissing Plaintiffs FMLA claim under Fed.R.Civ.P. 12(b)(6) with prejudice.
AFFIRMED in part, REVERSED in part, and REMANDED.

. By federal definition, a commercial motor vehicle (CMV) is “used on a highway in inter-stale commerce” and weighs at least 10,001 pounds. 49 C.F.R. § 390.5.

. We review the district court's grant of summary judgment under Fed.R.Civ.P. 56 de novo, applying the same legal standard as the district court. Watson v. Beckel, 242 F.3d 1237, 1239 (10th Cir.2001).

. While the district court did not address the second prong of the ADA’s prima facie case, which requires a showing that Plaintiff is qualified for the desired position, we may affirm on any ground supported by the record. See Gowan v. United States Dep’t of the Air Force, 148 F.3d 1182, 1189 (10th Cir.1998).

. Plaintiff appears to seek no position with Defendant other than CMV operator, and has suggested no means by which Defendant could reasonably accommodate him other than by simply accepting his medical certification. See Smith v. Midland Brake, Inc., 180 F.3d 1154, 1171-72 (10th Cir.1999) (en banc) (employee bears the initial responsibility of expressing a desire for reassignment if no reasonable accommodation is possible in his present position). Instead, Plaintiff steadfastly maintains that he can perform the essential functions of a CMV operator, and that Defendant has no authority to override his CMV certification.

. DOT’s interpretation of § 391.41(b)(8) reads in relevant part:
§ 391.41(b)(8) — A person is physically qualified to drive a commercial motor vehicle if that person:
Has no established medical history or clinical diagnosis of epilepsy; or
Any other condition which is likely to cause the loss of consciousness; or any loss of ability to control a commercial motor vehicle, [emphasis in original].
Epilepsy is a chronic functional disease characterized by seizures or episodes that occur without warning, resulting in loss of voluntary control which may lead to loss of consciousness and/or seizures. Therefore, the following drivers cannot he qualified:
1. a driver who has a medical history of epilepsy; or
2. a driver who has a current clinical diagnosis of epilepsy; or
3. a driver who is taking antiseizure medication.
If an individual has had a nonepileptic seizure or an episode of loss of consciousness of unknown cause which did not require antisei-zure medication, the decision as to whether that person's condition may result in the loss of consciousness or loss of ability to control a motor vehicle is made on an individual basis by the medical examiner in consultation with the treating physician....
In those individual cases where a driver had a nonepileptic seizure or an episode of loss of consciousness that resulted from a known medical condition (e.g., drug reaction, high temperature, acute infectious disease, dehydration, or acute metabolic disturbance), certification should be deferred until the driver has fully recovered from that condition, has no existing residual complications, and is not taking antiseizure medication, [emphasis added],

. The Medical Advisory Criteria are prefaced with a note that states in relevant part:
Unlike regulations which are codified and have a statutory base, the recommendations in this advisory are simply guidance established to help the medical examiner determine a driver’s medical qualifications pursuant to § 391.41 of the Federal Motor Carrier Safety Regulations (FMSCRs). •.. The medical examiner may, but is not required to, accept the recommendations. Section 390.3(d) of the FMSCRs allows employers to have more stringent medical requirements.
Medical Advisory Criteria at 407.

. This case is quite similar to Murphy v. United Parcel Serv., Inc., 946 F.Supp. 872 (D.Kan.1996), aff'd, No. 96-3380, 1998 WL 105933 (10th Cir.1998) (unpublished), aff'd, 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). In that case, plaintiff's job as a mechanic required him to drive UPS tractor-trailers for road tests and repair calls. DOT regulations, namely 49 C.F.R. § 391.41(b)(6), provided that a person with a current clinical diagnosis of high blood pressure was not physically qualified to drive a CMV. The same Medical Advisory Criteria upon which Defendant relies in this case described high blood pressure as greater than 160/90. Plaintiff, who suffered from high blood pressure, could not take the amount of medication necessary to lower his blood pressure to that level without further damaging his health. Although plaintiff had obtained a licensed physician’s medical certification to drive, the district court concluded, based upon DOT’s Medical Advisory Criteria, that plaintiff was not qualified to operate a CMV within the meaning of the ADA.

. The record contains no evidence to suggest Defendant treated Plaintiff differently than other CMV operators in its employ, or used DOT standards as a pretext to terminate Plaintiff.

. We review a complaint’s dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim de novo. Aguilera v. Kirkpatrick, 241 F.3d 1286, 1292 (10th Cir.2001).

. To be covered under the FMLA, an employer must employ fifty or more people and engage in interstate commerce. Stoops v. One Call Communications, Inc., 141 F.3d 309, 311-12 (7th Cir.1998) (citing 29 U.S.C. § 2611(2)). Defendant does not deny that it is a "covered” employer under the FMLA.

. The district court further suggested that Plaintiff had no private cause of action against Defendant for violation of "the FMLA’s notice requirements.” The FMLA’s notice requirements on which the district court relied to support its suggestion, however, are not involved in this case. Plaintiff did not allege a violation of the notice-posting requirements set forth in 29 U.S.C. § 2619. Rather, Plaintiff claims Defendant’s failure to personally notify him of his FMLA rights in connection with his termination constituted interference with those rights under 29 U.S.C. § 2615(a)(1). Section 2615(a)(1) of the FMLA prohibits an employer from interfering with the exercise or attempt to exercise any right provided by the FMLA. Section 2617(a)(2), in turn, authorizes an eligible employee to bring a civil action against an employer for violating § 2615. Id. § 2617(a)(2). Accordingly, if sufficiently plead, Plaintiff may maintain a private cause of action for a violation of his FMLA rights.