PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

FILED
**United States Court of Appeals**
**Tenth Circuit**

**June 2, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

FLOYD WILKERSON,

        Plaintiff-Appellant,

    v.

ERIC K. SHINSEKI,[1]
Secretary, United States Department of
Veterans Affairs,

        Defendant-Appellee.

No. 09-8027

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 2:08-CV-00115-CAB)**

Bruce T. Moats, Law Office of Bruce T. Moats, Cheyenne, Wyoming, for Appellant.

Joseph H. Azbell, Assistant United States Attorney (Kelly H. Rankin, United States Attorney, and Carol A. Statkus, Assistant United States Attorney, with him on the brief), Cheyenne, Wyoming, for Appellee.

Before **TACHA, HENRY,** and **HARTZ**, Circuit Judges.

**HENRY**, Circuit Judge.

---

[1] Pursuant to Fed. R. App. P. 43(c), we have substituted Eric K. Shinseki as the Defendant-Appellee in this action.

Floyd Wilkerson worked on a temporary basis at the Cheyenne Veteran Affairs Medical Center as a boiler plant operator. Following a failed physical examination, the human resources manager notified him that he was reassigned to a lower paid position. Mr. Wilkerson brought suit against the Secretary of the U.S. Department of Veterans Affairs (the "VA"), claiming that this reassignment discriminated against him based on his obesity and diabetes, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, and that age discrimination played a role in his reassignment in violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 626 and 633a(a). Mr. Wilkerson later tried to amend his complaint to allege that his health records were illegally accessed in violation of the Privacy Act, 5 U.S.C. § 552a. The district court granted summary judgment for the VA on all counts and denied Mr. Wilkerson's motion for leave to amend the complaint to allege the Privacy Act claim.

Because we find that Mr. Wilkerson was not otherwise qualified to hold the position as required by the Rehabilitation Act, we affirm the grant of summary judgment as to this claim. We also affirm the district court's grant of summary judgment as to his age discrimination claim because the VA had a non-discriminatory reason for removing Mr. Wilkerson that was not pretextual. Finally, because Mr. Wilkerson has not alleged that the accessing of the records was intentional misconduct, as required by the Privacy Act, we affirm the district court's denial of leave to amend the complaint.

2

## I. BACKGROUND

Mr. Wilkerson is employed by the Department of Veterans Affairs in Cheyenne, Wyoming. In February 2003, he began work at the VA as a boiler plant operator under a temporary appointment. When that appointment ended in July 2003, the VA hired Mr. Wilkerson as a full-time permanent employee in housekeeping. In February 2005, Mr. Wilkerson was temporarily reassigned once again to work as a boiler plant operator due to a shortage of employees.

VA directives require that all boiler plant operators complete an annual fitness exam. In early 2007, because of an apparent oversight, the VA discovered that Mr. Wilkerson had not completed an annual fitness exam up to this point. Nurse Practitioner Ann Enlow conducted Mr. Wilkerson's physical examination on February 1, 2007. The exam results noted that Mr. Wilkerson was obese (at 6'3", Mr. Wilkerson weighed 338 pounds) and had diabetes. Ms. Enlow forwarded her report to Dr. James Johnson, an employee health physician at the VA. After reviewing Ms. Enlow's report, Dr. Johnson accessed Mr. Wilkerson's electronic patient records (Mr. Wilkerson had sought medical treatment at the VA for numerous years). From these records and Ms. Enlow's report, Dr. Johnson concluded that Mr. Wilkerson's diabetes was largely uncontrolled and uncontrollable.

Dr. Johnson spoke to the boiler room supervisors about the physical requirements of the job, as well as with members of the engineering department and human resources.

Ultimately, Dr. Johnson concluded that Mr. Wilkerson was unable to meet the minimum requirements of the boiler plant operator position.

The VA Center for Engineering & Occupational Safety and Health (CEOSH) has established guidelines for work as a boiler plant operator at a VA facility. The guidelines state that "Applicants for all boiler plant operators and heating and boiler plant equipment mechanic positions must demonstrate to the Occupational Health Provider's satisfaction that they are capable of arduous physical exertion." Aple's App. at 00092. Such employees, the guidelines report:

> frequently work in confined areas in and around boilers and support equipment. The work requires moderate to strenuous effort and long periods of walking, standing, climbing, bending and crouching. Workers frequently lift and carry boiler parts and chemical supplies weighing up to 40 pounds unassisted and occasionally items weighing over 40 pounds with assistance of other workers or weight-handling equipment.

*Id.* The guidelines then state that any "structural or functional limitation or defect that interferes materially with a high degree of physical activity will disqualify the individual" and sets a number of criteria that are "exclusionary," among these are "[u]ncontrolled or poorly controlled insulin-dependent diabetes." *Id.* at 00092, 00093. Finally, "boiler plant operators must have annual physical examinations to ensure physical fitness to perform assigned duties." *Id.*

Accordingly, Dr. Johnson called Sandra Willoughby, the Human Resources Officer for the VA at the time, and told her that Mr. Wilkerson had failed his physical, noting Mr. Wilkerson's uncontrolled diabetes and his concern about Mr. Wilkerson's ability to perform challenging physical tasks. Ms. Willoughby told Mr. Wilkerson that he

4

failed his physical, and that he no longer met the environmental requirements for a boiler plant operator because he weighed over 300 pounds and the ladders in the boiler plant only supported up to 300 pounds. After he received the letter, Mr. Wilkerson requested that special accommodations be made for his weight; specifically he asked that the VA purchase ladders that would support his weight. According to the deposition testimony of Ms. Willoughby, the VA considered this option but dismissed it because the other issues raised by the physical would still preclude his safe employment. *Id.* at 00066 (Deposition of Ms. Willoughby). Ms. Willoughby informed Mr. Wilkerson that the VA was reassigning him back to housekeeping, effective the next day. *Id.* at 00032.

After Mr. Wilkerson's reassignment to housekeeping, his pay grade fell eight levels, from WG-10 to WG-2, and his hourly pay decreased from $21.98 an hour to $12.51 an hour.

Mr. Wilkerson brought suit against the Department of Veterans Affairs Secretary, James B. Peake, alleging that the VA had discriminated against him in violation of the Rehabilitation Act, 29 U.S.C. §§ 791, 794, that the VA failed to accommodate his disability, 42 U.S.C. § 12112 *et seq.*, and that he was unlawfully discriminated against based on his age in violation of the ADEA, 29 U.S.C. § 626 and 633a(a). While the VA's summary judgment motions were pending, Mr. Wilkerson asked for leave to amend his complaint to include a violation of the Privacy Act, 5 U.S.C. § 552a, alleging that Dr. Johnson wrongfully accessed Mr. Wilkerson's private medical records.

5

The district court granted summary judgment for the VA as to all of Mr. Wilkerson's claims. The district court also denied Mr. Wilkerson's motion for leave to file his amended complaint, ruling that any amendment would be futile. Mr. Wilkerson now appeals.

## II. ANALYSIS

### A. Rehabilitation Act claim

Mr. Wilkerson alleges that he was reassigned based on his diabetes and obesity, in violation of the Rehabilitation Act. We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. *Somaza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008). "Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). "When applying this standard, we examine the factual record in the light most favorable to the party opposing summary judgment." *Belhomme v. Widnall*, 127 F.3d 1214, 1216 (10th Cir. 1997).

To make out a prima facie case for discrimination in violation of the Rehabilitation Act, Mr. Wilkerson must establish: "(1) that [he] is disabled under the Act; (2) that he would be 'otherwise qualified' to participate in the program; (3) that the program receives federal financial assistance (or is a federal agency . . .); and (4) that the program has discriminated against the plaintiff." *McGeshick v. Principi*, 357 F.3d 1146,

6

1150 (10th Cir. 2004). We apply the standards from the American with Disabilities Act in analyzing a Rehabilitation Act claim. 29 U.S.C. § 791(g); *Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007) ("We . . . look to the ADA for guidance in resolving Rehabilitation Act claims.").

### 1. Is Mr. Wilkerson disabled under the Act?

The first factor under the Rehabilitation Act is that the plaintiff must have a disability. The Rehabilitation Act defines the term "disability" to mean any of the following:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2); *see also EEOC Interpretive Guidelines for the Rehabilitation Act*, 29 C.F.R. § 1614.203(b). To be substantially limited in a major life activity, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002). The impairment's impact must "be permanent or long term." *Id.* In analyzing whether something is a disability the court looks to whether it is a "physiological disorder or condition affecting one or more body systems, or any mental or psychological disorder." *Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 603 (11th Cir. 2008) (citing 29 C.F.R. § 1630.2(h)(1), (2)). A medical diagnosis is insufficient, rather, "the ADA requires plaintiffs to offer

7

evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial." *Id.*

Here there are two potentially qualifying disabilities: obesity and diabetes. The question of whether the defendant is disabled was not decided by the district court. The district court stated that: "For the sole purpose of determining whether summary judgment is appropriate in this case, this Court will . . . assume that Plaintiff has met his burden in proving that he is a disabled person." Aplt's App. at 8. On appeal, neither side has fully briefed this question nor is there a record on which to base a decision on whether Mr. Wilkerson is disabled. Further, we find other aspects of the analysis dispositive. Thus, like the district court, we will assume that Mr. Wilkerson has met this prong of the analysis.

### 2.  Is Mr. Wilkerson otherwise qualified?

The Rehabilitation Act and the ADA provide relief only to disabled persons who are "otherwise qualified" to perform the functions of the job. 29 U.S.C. § 794(a). The Equal Employment Opportunity Commission (EEOC) is authorized by 42 U.S.C. § 12116 to promulgate regulations to implement the provisions of the ADA. *See* 29 C.F.R. § 1630.1–.16. We give these regulations "a great deal of deference." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1165 n.5 (10th Cir. 1999) (citation omitted); *see Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 899 n.3 (10th Cir. 1997). Under these regulations, employers may set skill, experience, education and other job related requirements, including physical qualifications for the employment position. *Tate v. Farmland Indus.*

8

*Inc.*, 268 F.3d 989, 993 (10th Cir. 2001); *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979) ("An otherwise qualified person is one who is able to meet all of the program's requirements in spite of his handicap.").  An employer, however, may not: "us[e] qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity."  42 U.S.C. § 12112(b)(6); *see also E.E.O.C. v. Exxon Corp.*, 203 F.3d 871, 872 (5th Cir. 2000) ("The ADA prohibits an employer from using qualification standards that screen out a disabled individual or class." (citing 42 U.S.C. § 12112(b)(6) (1999)).  Additionally, any job requirement must be uniformly enforced.  *Tate*, 268 F.3d at 993.  Assuming these requirements are met, we defer to employment guidelines as "constituting a body of experience and informed judgment."  *Id.* at 994 (quoting *United States v. Mead Corp.*, 533 U.S. 218 (2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944))).[2]

The district court found that Mr. Wilkerson was not otherwise qualified for employment as a boiler room operator:  "Although the Court assumes that the Plaintiff is disabled, the Court finds that summary judgment is appropriate in this case because

---

[2] In addition, we may consider whether the employee would represent a "direct threat" to himself or others if the employment continued.  42 U.S.C. § 12133(b).  Because we hold that he is not otherwise qualified, we need not reach this question.

Plaintiff was not 'otherwise qualified' for the position of boiler plant operator. . . . Plaintiff was not discriminated against because of his weight. He simply failed to meet the minimum physical requirements of the position. Because he could not meet these requirements, Plaintiff was not 'otherwise qualified' to be a boiler plant operator at the VA." Aplt's App. at 13 (citations omitted). We agree.

CEOSH's guidelines for who could work as a boiler plant operator set a number of criteria that are "exclusionary," and among these are "[u]ncontrolled or poorly controlled insulin-dependent diabetes." Aple's App. at 00093. The job requires an operator who might be able at all times to respond to an emergency with some degree of physical agility. *Id.* at 00092. Moreover, the job requires a fair amount of heavy lifting, bending, agility in movement and so forth. *Id.* at 00092, 00094 ("Boiler Plant Operator Physical Requirements"). Thus, the question becomes whether these requirements are (1) job-related, (2) uniformly enforced, and (3) consistent with business necessity, *Tate*, 268 F.3d at 993; if so, the employer has the right to establish what is required to satisfactorily perform the job.

All three elements for a valid physical fitness requirement are satisfied here. First, the guidelines are undisputedly job-related: they describe the duties of the job and then establish categories of individuals who are excluded based on this. For example, in the case of a shutdown or an emergency, an operator needs to be able to react swiftly to any emergency, such as an increase in pressure. Aple's App. at 00041 (Deposition of Elvin Wrede) (describing the process in case a shutdown is needed). Further the daily

10

responsibilities require that an operator "be able to (1) utilize pipe wrenches of varying sizes for removal or tightening of pipe fittings; (2) go up and down ladders to perform any required maintenance such as re-packing or tightening the packing on the valves, change relief valves, replace gaskets and tighten bolts on steam line flanges; and (3) react instantly to any dangerous situations that might occur." *Id.* at 00028 (Declaration of Elvin Wrede).

Next, the VA uniformly enforced the boiler room operator guidelines: "The VA requires that all boiler room operators undergo an annual physical examination" and those who fail are subject to removal. Aple's App. at 00031 (Declaration of Sandra Willoughby), 00029 (Declaration of Elvin Wrede), 00037 (Deposition of Elvin Wrede); *see also id.* at 00040 (describing another employee who failed to meet the physical requirements and who was removed from boiler room duties). Indeed, Mr. Wilkerson makes no real argument that the VA treated others in his situation differently.

Finally, the guidelines are a business necessity. The requirements are minimal physical standards that a boiler room operator must meet. Mr. Wilkerson's supervisors testified that his responsibilities included being able "to respond to warning bells and gauges, and that he 'needed to be able to climb ladders and go up and down stairs quickly.'" Aplt's App. at 76. Although Mr. Wilkerson testified that 95% of his work was "[l]ight duty," and he was only occasionally required to climb on ladders, in times of crisis, he might need to act quickly and move with dispatch. *Id.* at 116–17. The VA was within its power when it passed these guidelines and it is understandable for

11

administrative ease and to ensure the uniformity of standards that it would desire to have guidelines that establish a limited class of individuals who do not qualify to work in boiler rooms at their facilities.

We acknowledge that Mr. Wilkerson worked for two years at this position without incident. Of course, Mr. Wilkerson's weight and health status during all of this time is unknown; we only know that information as of February 2007. But in any event, the requirements are there in case of an extraordinary but possible emergency, not necessarily to determine the ability to perform day-to-day routine boiler plant operations. The fact that no such emergency occurred during Mr. Wilkerson's tenure and that he was able to perform his job is fortuitous; but an employer may set standards not only for the mundane work but also for the exceptional. As long as the need to perform in an emergency is a realistic component of the job, the employer should be able to "establish reasonable physical qualifications" to ensure that an emergency situation can be dealt with safely and efficiently by the employee, especially in situations like here, where the physical safety of others may be at risk. *Southeastern Cmty. Coll. v. Davis*, 442 U.S. at 414.

The record indicates that Mr. Wilkerson would pose a danger to himself and others should he fall from a ladder. It also warns of potentially disastrous effects if he was unable to shut down a boiler if it malfunctions, leading to a possible explosion. For example, Mr. Wilkerson's supervisor, Elvin Wrede, stated that if one of the boilers was to explode from improper maintenance or operation, "the force would bring down the entire

12

building that houses them." Aple's App. at 28 (Declaration of Elvin Wrede). Thus, we agree with the district court that because Mr. Wilkerson failed to meet the VA's boiler room operator safety standards he was not "otherwise qualified" as required by the Rehabilitation Act.

We have established that before an individual can be deemed not "otherwise qualified" the employer must make an effort to accommodate the employee's disability. *See Woodman v. Runyon*, 132 F.3d 1330 (10th Cir. 1997); 42 U.S.C. § 12112(b)(5)(A). We have held that federal employers, like the VA, "must play a considerable role in ensuring that every reasonable effort is made to find suitable jobs for disabled employees." *See Woodman*, 132 F.3d at 1334. "There are two components to the reasonable accommodation analysis. *First*, whether a reasonable accommodation would enable the employee to do the particular job. Additional training might be a reasonable accommodation for this purpose. *Second*, whether the employee could be transferred to other work which could be done with or without accommodation." *Gonzagowski v. Widnall*, 115 F.3d 744, 747 (10th Cir. 1997) (emphasis in original). "The federal regulations implementing the ADA envision an interactive process that requires participation by both parties." *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) (quotation marks and citations omitted).

We hold that the VA made reasonable accommodations under the circumstances. The VA reassigned Mr. Wilkerson to another position, albeit a lower-paid one. As we previously stated, "reassignment of an employee to a vacant position in a company is one

13

of the range of reasonable accommodations which must be considered and, if appropriate, offered if the employee is unable to perform his or her existing job." *Smith*, 180 F.3d at 1167. However, when such an offer involves lower pay or benefits, it only satisfies the employer's duty to accommodate if there are no reasonable accommodations either in the old job or in another vacant lateral position. *Id.* We hold that under the circumstances there were no reasonable accommodations that would have allowed Mr. Wilkerson to remain employed in the boiler room and thus the transfer to the lower paid position was reasonable.[3] For example, Mr. Wilkerson's request that the VA purchase a special ladder to accommodate for his weight was a reasonable request and the VA considered it. The VA, however, concluded that such action would not relieve all of the concerns of keeping Mr. Wilkerson in the boiler room. *See* Aple's App. at 00066 (Deposition of Sandra Willoughby) (stating that the VA would have been willing to purchase such a ladder but that the VA had too many other concerns that Mr. Wilkerson would not have been qualified even with such a purchase).

We have also held that the Rehabilitation Act "requires an 'interactive process.'" *Woodman*, 132 F.3d at 1345 n.16 (reasonable accommodation "is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability" (quoting 29 C.F.R. Pt. 1630, App. § 1630.9 (1996))). "The obligation to engage in an interactive process is inherent in the statutory obligation to

---

[3] Mr. Wilkerson does not argue that he should have been transferred to a different vacant position in the VA.

14

offer a reasonable accommodation to an otherwise qualified disabled employee. The interactive process is typically an essential component of the process by which a reasonable accommodation can be determined." *Smith*, 180 F.3d at 1172. Here, although there was not a face-to-face meeting between the parties to discuss accommodations, Mr. Wilkerson requested an accommodation that the VA considered and denied. Based on the circumstances in this case, it was reasonable for the VA to conclude that any further interactive process would be futile and that no reasonable accommodation was possible that would allow Mr. Wilkerson to work in the boiler room.

Thus, we hold that Mr. Wilkerson is not otherwise qualified to serve in the boiler room and there was no reasonable accommodation that would have allowed him to continue. Accordingly, summary judgment is appropriate as to this claim, and we affirm the district court's grant of summary judgment for the defendant, the VA.

B.      Age Discrimination Employment Act claim

Mr. Wilkerson next argues that he was discriminated against on the basis of his age, in violation of the ADEA, 29 U.S.C. §§ 626 and 633a(a). The district court granted summary judgment as to this claim, which we review de novo applying the same legal standard as above. *Somaza*, 513 F.3d at 1211. "Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)).

15

To establish a prima facie case for age discrimination, the plaintiff must prove that he was (1) within the protected class of individuals 40 or older, (2) performed satisfactory work; (3) terminated from employment; and (4) replaced by a younger person. *Adamson v. Multi-Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008). Once a prima facie case is established, the burden shifts to the VA to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* at 1145. If the VA does so, the burden returns to Mr. Wilkerson to show either that the VA's asserted reason was pretextual, or to show that age was nonetheless a determinative factor in the VA's employment decision. *Id.* at 1145. Under the ADEA, a "plaintiff is not required to show that age was the sole motivating factor in the employment decision. Thus a plaintiff need not prove that the reasons offered by the defendant are false if he proves that age was also a reason, and that age was the factor that made a difference." *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1170 (10th Cir. 1985) (citations omitted).

Mr. Wilkerson presents three main arguments in support of his age discrimination claim. First, he states the VA denied consideration of his applications for two boiler room positions that opened in 2007 and the VA filled both of these positions with employees younger than him. Second, he points to comments made by Mr. Wrede, his direct supervisor. Another employee reported that Mr. Wrede expressed frustration with having to complete a work schedule when so many operators were on extended medical leave, and that maybe he should hire younger workers. Aplt's App. at 108 (Declaration of Robert Reed). Third, Mr. Wilkerson claims that the VA's inconsistencies and

16

contradictory rationale demonstrate pretext. *See Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005) ("[W]eaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.").

Mr. Wilkerson has properly alleged all the elements to establish a prima facie case. He is over the age of forty, he was performing satisfactory work, he was terminated from this position, and, finally, he was replaced by employees who were younger. Aple's App. at 00022 (alleging that the VA hired two employees to replace him who were ages 47 and 37). The VA, however, has asserted a non-age related justification for its actions—Mr. Wilkerson failed the mandated physical and that it believed that Mr. Wilkerson was unable to perform the essential functions required of a boiler room operator.

Thus, the burden shifts back to Mr. Wilkerson to allege facts sufficient to show that the VA's justification was a pretext or that age was a determinative factor. Even if we accept everything Mr. Wilkerson asserts as true, he could not prove that "age was a factor that made the difference" or that the VA's justification was pretextual. *Prudential Federal Sav. & Loan Ass'n*, 763 F.2d at 1170. The record supports the VA's stated rationale for transferring Mr. Wilkerson—that he could not meet the physical qualifications. At best, Mr. Wilkerson had a one time, offhand, and fairly ambiguous comment by a supervisor—not directed toward Mr. Wilkerson—who did not even make

17

the ultimate decision with respect to his employment. Given that there are no disputed facts, and the evidence that exists could not support a claim under the ADEA, we agree with the district court that summary judgment in favor of the VA is appropriate on this claim.

C.      Privacy Act claim

Mr. Wilkerson argues Dr. Johnson's accessing of Mr. Wilkerson's health records violated his privacy rights. The district court denied Mr. Wilkerson's motion for leave to amend his complaint to allege a Privacy Act violation, 5 U.S.C. § 552a.[4] We review the district court's decision to deny leave to amend a complaint for an abuse of discretion. *Hertz v. Luzenac Group*, 576 F.3d 1103, 1117 (10th Cir. 2009). A district court should refuse leave to amend "only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City & County of Denv.*, 397 F.3d 1300, 1315 (10th Cir. 2005).

The Privacy Act provides that: "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent

---

[4] Mr. Wilkerson also attempts to allege a violation of the Health Insurance Portability and Accountability Act. Aplt's Br. at 40 ("The VA is undisputedly governed by the Privacy Act and the so-called 'Privacy Rule' of the [HIPAA]."). Any HIPAA claim fails as HIPAA does not create a private right of action for alleged disclosures of confidential medical information. *See Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) ("We hold there is no private cause of action under HIPAA.").

18

of, the individual to whom the record pertains." 5 U.S.C. § 552a(g)(1)(D). For a plaintiff to succeed on a Privacy Act claim, he must demonstrate the following four elements: (1) the information is a record within a system of records, (2) the agency disclosed the information, (3) the disclosure adversely affected the plaintiff, and (4) the disclosure was willful or intentional. *Pierce v. Dep't of U.S. Air Force*, 512 F.3d 184 (5th Cir. 2007). Of course, certain disclosures are authorized and do not give rise to a Privacy Act claim. *See* 5 C.F.R. § 297.401 (1996).

Mr. Wilkerson's medical records are undisputedly an applicable record; these files were not part of his employee medical file. Similarly, the parties do not dispute that the VA's disclosure of the information adversely affected Mr. Wilkerson.

As to element (2), whether there was a disclosure, "[a]lthough 'disclosure' is not defined in the text of the Privacy Act, the Office of Personnel Management ('OPM') has defined 'disclosure' under the Privacy Act to mean 'providing personal review of a record, or a copy thereof, to someone other than the data subject or the data subject's authorized representative.'" *Pippinger v. Rubin*, 129 F.3d 519, 528 (10th Cir. 1997) (quoting 5 C.F.R. § 297.102 (1997)). We have also interpreted this definition liberally to include not only the physical disclosure of the records, but also the accessing of private records. *Id.* When the VA revealed the information to Dr. Johnson, the VA disclosed information covered by the Privacy Act. The VA disclosed the information in the record to Dr. Johnson, who, under the law, constituted a person other than the data subject or the subject's authorized representative. The VA does not dispute that the disclosure

19

adversely affected Mr. Wilkerson. Thus, the claim turns on prong (4) whether the disclosure was willful or intentional.

A disclosure is considered "intentional or willful" under the Privacy Act only if the "action [was] so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful, or conduct committed without grounds for believing it to be lawful or action flagrantly disregarding others' rights under the Act." *Andrews v. Veterans Admin.*, 838 F.2d 418, 425 (10th Cir. 1998) (internal quotation marks and citations omitted). Such conduct must amount to reckless behavior, gross negligence is insufficient. *Id.*

There is no indication that the conduct in this case rises to the level to be considered "willful or intentional," nor does Mr. Wilkerson cite any. Dr. Johnson testified in his deposition that he thought he could access the record so long as he had a "need to know." Aplt's App. at 74; *see Hernandez v. Alexander*, 671 F.2d 402, 410 (10th Cir. 1982) (concluding that the "need to know" exception authorizes disclosure where records are necessary to make a disciplinary decision). There is no testimony in the records nor is there any other evidence to the contrary. And given that Mr. Wilkerson's health records were relevant to whether he could continue working at the VA, Dr. Johnson's belief was reasonable. Thus, we hold that the district court did not abuse its discretion in denying leave to amend the complaint to allege a violation of the Privacy Act as any attempt to amend the complaint would be futile, thus summary judgment is appropriate as to this claim.

20

## III. CONCLUSION

Mr. Wilkerson's frustration over his reassignment, after over two years working as the boiler room operator without incident is understandable. However, given these facts, we cannot penalize an employer for following its regulations regarding its reasonable medical health requirements, even if the employer acts belatedly. Thus, for the foregoing reasons, we affirm the district court's grant of summary judgment as to Mr. Wilkerson's Rehabilitation Act and ADEA claims and affirm the district court's denial of Mr. Wilkerson's motion for leave to amend his complaint to allege a violation of the Privacy Act.