In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1747

TYQUAN STEWART,

*Plaintiff-Appellant,*

*v.*

PARKVIEW HOSPITAL, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:17-cv-346 — **Theresa L. Springmann**, *Chief Judge.*

SUBMITTED AUGUST 29, 2019[*] — DECIDED OCTOBER 22, 2019

Before WOOD, *Chief Judge,* SCUDDER, and ST. EVE, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Tyquan Stewart sustained serious injuries upon crashing his car while driving under the

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. Fed. R. App. P. 34(a)(2)(C).

influence. An emergency room doctor treated Stewart and in doing so ordered a blood draw, which confirmed that he had been drinking. The police requested and received the blood-test results from the hospital's medical staff. Stewart later sued both officers for violating the Fourth Amendment by obtaining his test results without a warrant and the hospital's medical staff for violating the Health Insurance Portability and Accountability Act by disclosing the results. The district court entered summary judgment for the defendants. We affirm.

I

Stewart does not remember the time he spent in the hospital and indeed says that he was unconscious. His treating physician, however, said that upon arriving in the emergency room, Stewart relayed that he had been drinking and lost control of his car. He also signed a form consenting to treatment. As part of determining the proper course of treatment, the doctor ordered a blood draw.

Suspecting that alcohol contributed to the crash, the police asked the medical staff for Stewart's blood-test results. An Indiana statute requires medical staff who test a person's blood "for diagnostic purposes" to "disclose the results of the test to a law enforcement officer who requests the … results as a part of a criminal investigation" regardless of whether the person has "consented to or otherwise authorized their release." Ind. Code § 9-30-6-6(a) (2016). The test results showed that Stewart was intoxicated, and the nurses shared that information with the police. The officers then arrested Stewart and Indiana prosecutors later charged him with the state-law misdemeanor of operating a vehicle while intoxicated. Stewart pleaded guilty.

Invoking 42 U.S.C. § 1983, Stewart sued the police officers, doctor, nurses, and their employers in federal court. He accused the hospital's medical staff of violating the Health Insurance Portability and Accountability Act, or HIPAA, by disclosing medical information (his blood-test results) to the police without his consent. He also alleged that the police officers and their employer, the City of Fort Wayne, violated his Fourth Amendment rights by obtaining those results without a warrant. He added claims under Indiana law for negligence, infliction of emotional distress, battery, and invasion of privacy. In granting the defendants' motions for summary judgment, the district court concluded that Stewart's federal claims failed as a matter of law, and that he had not brought forth enough evidence to allow a jury to decide any state-law claim in his favor.

Stewart now appeals.

## II

We begin with Stewart's statutory claim under HIPAA. The district court concluded that the statute provides no private right of action and accordingly entered judgment for the medical defendants on that basis. We agree.

HIPAA prohibits the disclosure of medical records without the patient's consent. See 42 U.S.C. §§ 1320d–1 to d–7. But nowhere does the statute expressly create a private right of action to enforce this substantive prohibition. So the question becomes whether Congress nonetheless intended to allow private enforcement and the award of a private remedy. See *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855–56 (2017).

Although we have not addressed the issue in a precedential decision, all other circuits to have considered the question

have concluded that HIPAA does not confer individual enforcement rights—express or implied. See *Acara v. Banks*, 470 F.3d 569, 570–72 (5th Cir. 2006); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010). Those courts have reasoned that Congress, by delegating enforcement authority to the Secretary of Health and Human Services, did not intend for HIPAA to include or create a private remedy. See 42 U.S.C. §§ 1320d–3, –5. Under the Supreme Court's decision in *Alexander v. Sandoval*, Congress's choices about enforcement authority have consequences: "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." 532 U.S. 275, 290 (2001).

HIPAA's focus on the conduct of those with access to medical information—as opposed to the rights of individual patients—also weighs against finding an implied private right of action. See *id.* at 289. By prohibiting the disclosure of sensitive information, the statute imposes obligations on medical professionals charged with protecting the information without conferring individual privacy rights. See *Acara*, 470 F.3d at 571 (interpreting 42 U.S.C. §§ 1320d–1, –5, –6, and employing similar reasoning).

Seeing no reason to chart a different course, we now hold that HIPAA confers no private right of action. Medical professionals, including those who treated Stewart, are bound by the statute's disclosure prohibitions and confidentiality requirements. But Congress left enforcement for violations to the Department of Health and Human Services, not to private plaintiffs.

III

We turn next to Stewart's Fourth Amendment claim. The district court entered summary judgment for the defendant police officers on the basis that they were entitled to judgment as a matter of law because they obtained the blood-test results under the Indiana statute. The defendants urge us to affirm on that basis or on the grounds of qualified immunity. Agreeing that the district court committed no error, we choose the latter course.

Police officers enjoy immunity from liability for conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). For the law to be clearly established, it must be "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Qualified immunity, the Supreme Court has emphasized, "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Werner v. Wall*, 836 F.3d 751, 762 (7th Cir. 2016) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

Like the district court, we have identified no case law establishing that an officer's receipt of blood-test results from medical personnel offends the Fourth Amendment. Those cases that do address the question point in the other direction. In 1966 the Supreme Court recognized that the exigent-circumstances exception to the Fourth Amendment permitted police officers to order a warrantless blood draw from a conscious driver involved in an accident. See *Schmerber v. California*, 384 U.S. 757, 758–59, 766–72 (1966). Earlier this year, the Court reinforced and extended this same point, holding that, despite reductions in the time needed to obtain a warrant,

warrantless blood draws from unconscious drivers involved in car accidents do not offend with the Fourth Amendment. See *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2533–34, 2537–39 (2019).

Against the backdrop of *Schmerber* and *Mitchell*, we cannot say "beyond any debate" that the police officers' actions here were unconstitutional. *Ashcroft*, 563 U.S. at 741. Accepting Stewart's account that he was unconscious at the time of the blood draw, the officers had no reason to believe the Fourth Amendment barred the police from seeking the results of a blood test that a doctor ordered for medical purposes from a driver after a collision. In these circumstances, Stewart cannot establish that the officers violated a right clearly established under the Fourth Amendment, and qualified immunity applies. *Id.*; see also *Wilson v. Layne*, 526 U.S. 603, 615–18 (1999) (holding that officers' conduct was reasonable where they followed a common police practice and no judicial opinions at the time prohibited the conduct).

Because Stewart makes no argument that the City had an unconstitutional policy, practice, or custom, his claim against the City for the police officers' conduct likewise fails. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978).

IV

We owe a brief word in closing to the district court's entry of judgment for the defendants on Stewart's state-law claims. While purporting to disagree with that ruling, Stewart does not refer us to any evidence in the summary judgment record calling the district court's conclusions into question. He therefore has waived any challenge to the court's rejection of those

claims. See FED. R. APP. P. 28(a)(8)(A); *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 527 n.3 (7th Cir. 2014).

For these reasons, we AFFIRM.